## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| Aatrix Software, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Green Shades Software, Inc. <br><br> Defendant. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO STAY DISCOVERY PENDING RULE 12(b)(6) MOTION TO DISMISS** <br><br> Civil Action No. 3:15-cv-00164-HES-MCR |

## I. INTRODUCTION

Plaintiff Aatrix Software, Inc. ("Plaintiff" or "Aatrix") opposes the Motion of Defendant Green Shades Software, Inc.[1] ("Defendant" or "Green Shades") to Stay Discovery until the Court rules on Defendant's Rule 12(b)(6) Motion to Dismiss.

In its Motion to Stay, Defendant states that Plaintiff filed the Amended Complaint in this matter on May 15, 2015, and that much is true. However, Defendant omits to state much more. A great deal of work has and continues to be done by both parties to this point. Granting a stay would interrupt 10 months of work to resolve this matter or at least focus the issues, and will prejudice any chance of resolution. Defendant's Motion is a breach of an express agreement by Defendant embodied in an endorsed Order by this Court, that the filing of a Rule 12 Motion is not to delay the conduct of discovery. Defendant's Motion to Dismiss, which is the basis for its Motion to Stay, is based on a

---

[1] Plaintiff denominated the defendant as Greenshades Software, Inc. in the Amended Complaint. Plaintiff's counsel has been advised by Defendant's counsel that the correct name is Green Shades Software, Inc.

novel interpretation of Plaintiff's patents that is directly contradicted by a lengthy written opinion of Defendant's own counsel sent to Plaintiff's counsel several months ago, and contrary to basic rules of patent construction.

Defendant's Motion to Dismiss is not meritorious.  At a minimum, this Court should allow discovery to go forward so that claim construction can occur, and in the process of claim construction Plaintiff is confident that the Court will gain an understanding as to what Plaintiff's patent are actually directed to, that they are directed to concrete, specific improvements to the prior art for computerizing forms, and that they are not an attempt to preempt an abstract idea.  We, therefore, request that the Motion to Stay be denied.

## II.  BACKGROUND OF COMMUNICATIONS AND WORK DONE BY THE PARTIES PRIOR TO THE PRESENT MOTION FOR STAY.

Defendant's present Motion to Stay, if granted, will interrupt months of work and communications between the parties.

As a result of videos posted by Green Shades on the Internet, Plaintiff became concerned that Green Shades was infringing the '615 Patent. Lunseth Decl., ¶ 2. Plaintiff's counsel acquired a copy of Green Shades' publicly available software and engaged an outside consultant for the purpose of reviewing the software to determine if infringement existed.  *Id.*, ¶ 3.  Plaintiff's counsel reviewed the End User Licensing Agreement ("EULA") for the software, and was concerned that the EULA purported to prohibit any in depth examination.  *Id.*, ¶ 4.  On or about Sept. 25, 2014, Plaintiff's counsel sent a letter to Defendant Green Shades advising that Plaintiff believed

Defendant was infringing Plaintiff's '615 Patent and requesting that Green Shades consent to an inspection and analysis of the software. *Id.*, ¶ 4, Ex. 1. A second letter was sent on or about October 10, 2014. *Id.*, ¶ 4, Ex. 2.

On October 16 Plaintiff's counsel received an email from Green Shades' present defense counsel requesting a telephone conference. Lunseth Decl., ¶ 5, Ex. 3. Counsel for the parties conferred on October 17. *Id.*, ¶ 5. Defendant's counsel described why they thought their client's software did not infringe. *Id.* They agreed to send an email by October 20 or 21 confirming what they had said over the phone. *Id.* Plaintiff's counsel requested that defendant allow Plaintiff to inspect and analyze Defendant's software under a Confidentiality Agreement that would provide for protection of Green Shades' proprietary information. *Id.* It was agreed that Plaintiff's counsel would draft a Confidentiality Agreement and that the Agreement would provide for a "standstill," that is, Aatrix would not commence litigation for thirty days (December 31, 2014). *Id.*

Defendant's counsel sent a confirming email on October 21, Lunseth Decl., ¶ 6, Ex. 4, and that day Plaintiff's counsel sent a draft of a Confidentiality Agreement to defense counsel, *Id.*, Ex.'s 5, 6 & 7. A redraft was sent by Plaintiff's counsel the next day, October 22, 2014. *Id.*, Ex. 8. Defendant agreed to provide Plaintiff's counsel with a detailed analysis as to why its software did not infringe by November 7, 2014 (herein referred to as the "Noninfringement Letter"), *id.*, and Plaintiff agreed, after inspecting the software and reviewing the Noninfringement Letter, to provide Defendant with a detailed response, *id.*, ¶ 8, Ex. 10. Defendant's counsel provided comments to the Confidentiality Agreement. *Id.*, ¶¶ 8, 9, Ex.'s 9, 12. On November 5 Defendant's

counsel requested additional time to draft the Noninfringement Letter, and Plaintiff agreed. *Id.*, ¶ 9, Ex. 11. The Noninfringement Letter was sent on November 17. *Id.*, ¶ 10. The Confidentiality Agreement was signed on December 1, 2014. *Id.*, ¶ 11, Ex. 13.

Plaintiff's counsel, with the assistance of outside consultant, proceeded with inspection and analysis of the Green Shades software. *Id.*, ¶ 11. Plaintiff completed its review and analysis of the software, and on February 12, 2015 sent a letter to Defendant (herein referred to as "Infringement Letter") setting forth why Defendant infringed the '615 Patent. *Id.*, ¶ 13.

Defendant's Noninfringement Letter had said nothing about the '615 Patent being directed to "designing, creating, calculating, and importing data into, an electronic form on a generic computer connected to a generic network that replicates a paper form and is viewable, editable, and able to be printed or electronically transmitted by a user of that generic computer," which is the primary abstract idea the patent is said to cover in Defendant's Motion to Dismiss and Motion to Stay. Lunseth Decl., ¶ 10. Rather, the letter addressed itself to three of the four actual recited structures in Claim 1 of the Patent, namely, the form file, form file creation program, and form viewer program. *Id.* It walked through those structures one at a time, and stated why Defendant believed it did not infringe any of them. *Id.* The inspection of the software on behalf of Plaintiff, and Plaintiff's Infringement Letter, addressed Defendant's stated positions point by point, also following the recited structures of the claims. *Id.*, ¶ 13. Because Plaintiff's examination found definitively that infringement existed, Plaintiff filed a Complaint with this Court and sent Defendant an unserved courtesy copy. *Id.*, ¶ 14. Plaintiff also

4

advised that a second patent, the 8,984,393 patent (the "'393Patent"), had been allowed. *Id.* Defendant's counsel requested a telephone conference on February 13, 2015. *Id.*, ¶15, Ex. 14.

At that point, Plaintiff had incurred over $33,000 in expert costs to inspect and analyze the software, another $3,296 paid to Green Shades to acquire the software, and over $130,000 in legal fees related to the inspection, analysis, and communications with Defendant's counsel. Lunseth Decl., ¶ 16.

On February 13, Defendant's counsel advised that even if their client's software infringed the '615 Patent, they believed the damages were small and that an attempt should be made to settle the matter before litigation went forward. Lunseth Decl., ¶ 17. They said that they had engaged a damages expert to analyze the damages, and that they would provide a report from their expert. *Id.*, ¶ 18. They further proposed that, upon receipt of that report the parties should discuss settlement, and if we could not settle between us, that we ought to agree to a mediation. *Id.* Plaintiff's counsel told defense counsel that under Rule 4(m) of the Federal Rules of Civil Procedure Plaintiff could hold off on service of process for 120 days. *Id.*, ¶ 19. Plaintiff's counsel said that if Defendant wished to settle in that period of time, we were willing to try, but that settlement efforts would need to move quickly. *Id.* Defendant's counsel said that they believed a new Confidentiality Agreement would be needed to cover the exchange of financial information that would need to take place, and said they would draft one[2]. *Id.*, ¶ 20. Plaintiff's counsel immediately engaged a damages expert in anticipation of receiving

---

[2] The prior Confidentiality Agreement was limited by its terms to technical information.

a report from Defendant, and identified the expert to Defendant's counsel on February

13. *Id.*, ¶ 21, Ex.'s 15, 16.

Plaintiff's counsel set up a status call with opposing counsel for March 10, so that

defense counsel could report on the status of their expert's work. Lunseth Decl., ¶ 22. A

call was held on March 10, at which time Plaintiff's counsel were advised simply that the

expert had not completed her work, nor had Defendant drafted the proposed Protective

Order, and that Defendant needed more time. *Id.* Plaintiff's counsel sent Defendant's

counsel a short request on March 12, 2015 for information Plaintiff's expert thought

would be needed to evaluate any damage report. *Id.*, ¶ 23, Ex. 17. Plaintiff's counsel set

up and held another status call on March 18, and again were told that the report had not

been completed, that the expert was working on it, the Protective Order was not drafted,

and that Defendant needed more time. *Id.*, ¶ 24. We did not hear again from

Defendant's counsel until April 29, 2015, a month and a half later, when they sent a draft

of a proposed Protective Order more than two months after it had been promised. *Id.*, ¶

25. Plaintiff's counsel advised Defendant's counsel that too much time had passed and

that at that point we felt the best thing for us to do was serve the Complaint. *Id.*, Ex. 18.

The Protective Order draft prepared by Defendant's counsel was not limited to a

pre-suit exchange of information, rather, it was a Protective Order to be entered in the

litigation and that would cover all discovery. We felt that for that purpose the draft failed

to address a number of issues. Plaintiff's counsel therefore wrote a new Protective Order

and forwarded it to Defendant's counsel on May 13, 2015. Lunseth Decl., ¶ 26, Ex. 19.

There were several discussions about the Protective Order, it was eventually worked out,

was filed with the Court on June 8, 2015 and entered. Dkt. 17. However, as of May 13

no expert report had been produced by Defendant, nor any other documentation or

analysis of damages. *Id.*, ¶ 27. The 120 day deadline for service of process was

approaching expiration and Plaintiff had no indication from Defendant what, if anything,

they wanted to do to further the settlement discussions they had proposed. *Id.* We

therefore caused the Amended Complaint to be served on May 27, 2015. *Id.*

In sum, while it is true as Defendant states in its Motion for Stay that the

Amended Complaint was not served until May 27, 2015, the implication behind that

statement that the lawsuit was just recently started and that little work had been done, and

therefore that a stay would not be wasteful, is simply inaccurate.

### III.  LEGAL STANDARD.

In *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D.Fla. 1997) this Court adopted

the standard for a stay of discovery set forth in *Simpson v. Specialty Retail Concepts,*

*Inc.*, 121 F.R.D. 261, 263 (M.D.N.C.1988), as follows:

> "A court has broad inherent power to stay discovery until preliminary issues can
> be settled which may be dispositive of some important aspect of the case. *Petrus
> v. Bowen,* 833 F.2d 581 (5th Cir.1987). *See Harlow v. Fitzgerald,* 457 U.S. 800,
> 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)—(discovery may be stayed to determine
> the dispositive issue of immunity of government officials). Motions to stay
> discovery may be granted pursuant to Rule 26(c), Fed.R.Civ.P ., and the moving
> party bears the burden of showing good cause and reasonableness. *Howard v.
> Galesi,* 107 F.R.D. 348 (S.D.N.Y.1985). Such motions are not favored because
> when discovery is delayed or prolonged it can create case management problems
> which impede the Court's responsibility to expedite discovery and cause
> unnecessary litigation expenses and problems. *Kron Medical Corp. v. Groth,* 119
> F.R.D. 636 (M.D.N.C.1988). As a result, a request to stay all discovery pending
> resolution of a motion is rarely appropriate where resolution of the motion will
> not dispose of the entire case. *Lugo v. Alvarado,* 819 F.2d 5 (1st Cir.1987).
> Finally, the Court ordinarily should not stay discovery which is necessary to

gather facts in order to defend against the motion. *Wilderness Soc. v. Griles,* 824 F.2d 4 (D.C.Cir.1987); *Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550 (11th Cir.1985).

In deciding whether to stay discovery pending resolution of a pending motion, the Court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery. This involves weighing the likely costs and burdens of proceeding with discovery. It may be helpful to take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." *See also Hovermale v. School Board of Hillsborough County,* 128 F.R.D. 287 (M.D.Fla.1989).

Plaintiff Aatrix does not dispute that, if granted, Defendant's Motion to Dismiss would likely be dispositive of this case if upheld on appeal. However, given the deep flaws in Defendant's Motion to Dismiss, namely, its failure to address whether the actual steps and structures of Plaintiff's patents are an effort to preempt an abstract idea, it is not likely that the Motion will be granted. Plaintiff believes that the Court should at least allow discovery to proceed through claim construction in view of the fact that Defendant has provided the Court with virtually no information about the nature of the technology and the specific structures claimed in the patents. Further, the present Motion to Stay is in breach of an Agreement by Defendant that discovery would not be stayed pending any Rule 12 Motion. Any stay would only serve to interpose delay and would be prejudicial.

## IV.    DEFENDANT'S MOTION TO STAY IS A BREACH OF AN AGREEMENT MADE BY DEFENDANT IN ORDER TO OBTAIN AN EXTENSION OF TIME TO FILE ITS RULE 12(b)(6) MOTION TO DISMISS.

Defendant's counsel had a copy of a draft Complaint from Plaintiff in October, 2014, and had a courtesy copy of the actual Complaint in February, 2015. They were fully aware that the Complaint had been filed on February 13, 2015 and that the

Complaint needed to be served within 120 days.  They also received notice in February

that the USPTO had allowed the new '393 Patent.  The Amended Complaint, filed on

May 15, 2015, was amended solely to add a claim for infringement of the new Patent.

When Defendant's counsel contacted Plaintiff's counsel to request an extension of time

to answer or otherwise plead to the Amended Complaint, they did not need additional

time to put in an Answer, they needed time to draft a Rule 12 Motion.

The issue of a Rule 12 Motion and its impact on discovery was expressly

discussed between counsel.  *Id.*, ¶ 29, Ex. 20.  Plaintiff's counsel's consent to the

extension was expressly conditioned as follows:

> I am fine if you want an extension to July to submit an Answer or even a
> Counterclaim.  However, if your intention is to submit a Motion to Dismiss, I do
> not want the litigation further prolonged.  I am fine with the extension applying to
> any Motions to Dismiss, as long as it is agreed that the filing of the Motion will
> not delay or extend the time to meet and create a scheduling order, initial
> disclosures, or the commencement of discovery.  We have already delayed nearly
> four months waiting for an attempt to settle which did not materialize, and I do
> not mean to be critical, I understand it takes time to get your report together, but I
> do not want further delays before the litigation starts rolling.  Any stipulation
> should provide for no delay as a result of the filing of a Motion to Dismiss or the
> extension of time to answer.

*Id.*

Plaintiff's counsel specifically requested edits by Defendant to paragraph 6 of its

Unopposed Motion for Extension.  Lunseth Decl., ¶ 30, Ex. 22 .  The edits were agreed

to, *id.,* incorporated in the Motion filed with the Court, see Dkt. 18, and the Court entered

an Endorsed Order, Dkt. 19.  Defendant's own Unopposed Motion for Extension states:

> 6.      The parties respectfully request that neither this extension of time **nor the
> filing of any pleading or Rule 12 or other motion concerning the pleadings,** shall
> delay or extend any other deadlines applicable to this case, including the deadlines set
> forth in Local Rule 3.05(c)(2)(B) or Rule 26, Federal Rules of Civil Procedure, **nor shall**

**they delay the commencement or conduct of discovery** or the filing of Initial Disclosures.  [Emphasis added.]

In its Motion for Stay, Defendant has failed to state why its agreement that the filing of a Rule 12 Motion was not to delay discovery should be modified at this point, Defendant having received the benefit it sought for the agreement.  At a minimum, Defendant's statements in its Unopposed Motion are an admission that continuing discovery pending any Motion will impose no burden on Defendant that they were not willing to accept when the agreement was made.

## V.      A STAY OF DISCOVERY IS UNWARRANTED.

### A.      DEFENDANT'S MOTION TO DISMISS IS NOT LIKELY TO BE GRANTED, AND IS CONTRADICTED BY DEFENDANT'S OWN NONINFRINGEMENT LETTER.

We agree completely with Defendant that this Court should "take a peek" at the parties' submissions with respect to Defendant's Motion to Dismiss.  We do not intend to reargue what is in those submissions, but the gist of it is this:  Defendant moved the Court to dismiss Plaintiff's Amended Complaint because, they contend, Plaintiff's patents are directed to an abstract idea and therefore not patent eligible subject matter under *Alice Corp. v. CLS Bank Int'l.*, __US__, 134 S. Ct. 2347, 189 L.Ed.2d 296 (2014).  The primary abstract idea that they argue for[3] is "designing, creating, calculating, and

---

[3] Defendant actually argues for two conflicting abstract ideas, the one quoted in this brief, and "the application of a generic computer and a generic network to a fundamental human activity: filling out tax forms by hand with information from a ledger using a pen and paper, and then filing those tax forms with the appropriate agency."  Def.'s Mot. to Dism., p. 23.  Plaintiff's patents plainly do not cover either the filling out of forms by hand, or the computer equivalent, a human typing information into a form on a computer, and we therefore see no point in discussing it here.  See Plaintiff's Memorandum In Opposition To Defendant's Rule 12(b)(6) Motion To Dismiss, (abbreviated herein as "Pltf.'s Opp. to Mot. to Dism.") pp. 15-16.

importing data into, an electronic form on a generic computer connected to a generic

network that replicates a paper form and is viewable, editable, and able to be printed or

electronically transmitted, by a user of that generic computer."  To derive this alleged

abstract idea, Defendant took the preamble of Claim 1 of the '615 Patent and did some

editing.  Pltf.'s Opp. to Mot. to Dism., p. 10.  However, a preamble is not a claim

limitation, it does not describe what the claim is directed to, rather it is an expression of

the intended purpose of the claimed invention.  *Id.*, p. 10-11.  Under *Alice, supra*,

whether a claim is eligible subject matter is determined by what the claim is "directed

to."  The term "directed to" means "recited in the claims" or "set forth in the claims."

Pltf.'s Opp. to Mot. to Dism., pp. 9-10.

> The actual claim language of Claim 1 of the '615 Patent is as follows:
>
> 1.      A data processing system for designing, creating, and importing data into, a viewable form viewable by the user of the data processing system, comprising:
>        (a) **a form file** that models the physical representation of an original paper form and establishes the calculations and rule conditions required to fill in the viewable form;
>        (b) **a form file creation program** that imports a background image from an original form, allows a user to adjust and test-print the background image and compare the alignment of the original form to the background test-print, and creates the form file;
>        (c) **a data file** containing data from a user application for populating the viewable form; and
>        (d) **a form viewer program** operating on the form file and the data file, to perform calculations, allow the user of the data processing system to review and change the data, and create viewable forms and reports.

[Emphasis added.]

The four basic structures recited in Claim 1 are a form file, a form file creation

program, a data file, and a form viewer program.  These elements are all further defined

in the claim language and discussed in the specification of the patent.  As discussed in Pltf.'s Opp. to Mot. to Dism., p. 2-6 and in the Declaration of A. Dale Jensen in support thereof, these four structural elements comprise, alone and in combination, a distinct improvement over the prior art of writing forms and forms software in one monolithic software program.  For all of these reasons as stated in Plaintiff's Opposition to the Motion to Dismiss, that Motion is not meritorious and a stay pending the Motion is not warranted.

There is, however, an additional reason why the Motion to Dismiss is meritless, and that is that not even the Defendant interprets the patents as it was portrayed in the Motion to Dismiss.  In Defendant's Noninfringement Letter of November 17, 2014 Defendant addressed in detail the actual claim limitations of the form file, form file creation program, data file, and form viewer program.  See Lunseth Decl., ¶ 10[4].  They made no mention of any claim limitation of "designing, creating, calculating, and importing data into, an electronic form on a generic computer connected to a generic network that replicates a paper form and is viewable, editable, and able to be printed or electronically transmitted, by a user of that generic computer."  *Id.*  The Noninfringement Letter does not attempt to address whether the claim covers the alleged abstract idea, and for obvious reasons – the alleged abstract idea is not claimed in the '615 Patent - it is not recited or set forth in the claims.

In the Noninfringement Letter Defendant construes the '615 Patent as narrowly as

---

[4] Plaintiff has filed a Motion for Leave to File the Noninfringement Letter and the responsive Infringement Letter under seal.

possible, in fact impermissibly so, and then spends six pages of the letter going through

each of these elements explaining in detail why it believes the four structures are not

present in the software.  Lunseth Decl., ¶ 10.  And yet in their Motion to Dismiss, they

spend no time at all on these structures.  Instead, they cast the patents impermissibly

broadly, using the nonstructural language of the preamble in all of their arguments

concerning the alleged "abstract idea" to which the patents are supposedly directed.

We respectfully submit that Defendant's Motion to Dismiss is completely

contrary to their previously stated position in the Noninfringement Letter and is not

meritorious.

### B.   THIS COURT SHOULD PROCEED THROUGH CLAIM CONSTRUCTION TO GAIN AN UNDERSTANDING OF THE TECHNOLOGY AND THE PATENT.

In *StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.*, 2015 WL 518852 (D.C.

M.D. Fla., Feb. 9, 2015), slip copy p. 3, this Court stated:

> ...Defendants filed the instant Motion prior to claim construction.  As Defendants
> note, "claim construction is not an inviolable prerequisite" to an assessment of
> validity under Section 101.  *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of
> Canada (U.S.)*, 687 F.3d 1266,1273 (Fed. Cir. 2012); *see, e.g. Bilski*, 561 U.S.
> 593, 130 S.Ct. 3218, 177 L.Ed. 2d 792 (finding subject matter ineligible for patent
> protection without claim construction).  Nonetheless, "it will ordinarily be
> desirable – and often necessary – to resolve claim construction disputes prior to a
> § 101 analysis, for the determination of patent eligibility requires a full
> understanding of the basic character of the claimed subject matter."  *Bancorp
> Servs., L.L.C.*, 687 F. 3d at 1273-74.

In its Motion to Dismiss Defendant provided virtually no background concerning

the technology involved in this case, the prior art upon which Plaintiff's patents build, the

specific technologies involved in the structures and steps of the patents, nor the value of

Plaintiff's technological advances.  They provided simply their own mischaracterization of what the patents are directed to, unencumbered by the actual limitations of the claims. Defendant's positions as to what the Patents are directed to have varied with the circumstances and been directly conflicting.   The parties have submitted a Case Management Report that includes a Technology Conference with the Court by December 15, 2015, and a Markman hearing by March 15, 2016.  Leading up to the Markman hearing, the Case Management Report contains specific deadlines for the parties to confer and exchange information on the terms of the patents to be interpreted by the Court and the meanings each party asserts for those terms.  We respectfully suggest that at a minimum, the Court should acquire all the information it needs to understand the technology at issue in this case and what the patent is actually directed to, before considering a Motion to Dismiss under *Alice.*

## C .    A STAY OF DISCOVERY WOULD BE HARMFUL, PREJUDICIAL, WASTEFUL, AND UNLIKELY TO RESULT IN A RESOLUTION OF THIS CASE.

Plaintiff has spent considerable effort in this case to determine whether defendant Green Shades infringes its patents before commencing suit. As of the middle of February, 2015, two months before the Amended Complaint was served, Plaintiff's costs, expert and legal fees exceeded $165,000 and further expert costs and fees have been incurred since then. In fact, as set forth above in some detail, a great deal of work has already gone into this case by both parties.  Experts have been engaged, noninfringement and infringement analyses have been conducted and exchanged, and each party has set forth

in writing its – at least preliminary – view of what the terms of the Patents mean and what they cover.  All of this work will be interrupted by a stay.

Stays are rarely effective in resolving cases and a stay in this case would be wasteful and prejudicial.  Lunseth Decl., ¶¶ 31-39.  Unless the outcome of the stay is an Order of Dismissal that holds up on appeal,  the effect of the stay is to interrupt discovery to the detriment of all parties.   Critical witnesses leave their companies, are fired, die, or move and become difficult to reach and depose, and documents are lost or destroyed despite best efforts of the parties to preserve them.  *Id.*, ¶ 39.  Experts and lawyers who have done work and gotten up to speed on a case put the work down, and when the case is revived months or years later must duplicate effort and re-learn the case. *Id.*,  ¶¶ 33-35.  Plaintiff estimates that even a brief stay in this matter would cost a minimum of $50,000 in "stop and start" costs, comprising duplicated effort by the lawyers and experts when the stay is lifted. *Id.*, ¶ 35.  Perhaps worst of all, the Court loses the ability to bring the parties to the table and make efforts to resolve the case.  The Court certainly always has the power to bring the parties to the table, but rarely is it effective when no discovery is done and each party remains convinced of the validity of its own position.  Infringement continues, and while the Courts often note that infringement can be valued and compensated in a verdict, in this particular case the parties are direct competitors and no verdict can ever adequately compensate a patent holder for the loss of competitive position that occurs when a competitor avails itself of valuable, patented technology to gain customers and business.

## VI.    CONCLUSION

A stay should not be entered in this case.  Defendant agreed, as embodied in an Endorsed Order by this Court, that the filing of a Rule 12 Motion was not to delay the conduct of discovery.  The basis for the stay request is a Motion to Dismiss which is deeply flawed, and is based on an interpretation of Plaintiff's patents that is directly contradicted by Defendant's counsel's own written opinion.  Even a brief stay would interrupt months of work that both parties have already put into this case.  It would be costly, burdensome, and prejudicial to both parties.  We respectfully request that Defendant's Motion for Stay be denied.


**BRIGGS AND MORGAN, P.A.**

By:

   John B. Lunseth (MN Bar No. 65341)
80 South Eighth Street
2200 IDS Center
Minneapolis, Minnesota 55402
(612) 977-8484
(612) 977-8650 fax
jlunseth@briggs.com

Joanne M. O'Connor
(Fla. Bar No. 0498807)
joconnor@jonesfoster.com
Jones Foster Johnston & Stubbs, P.A.
505 South Flagler Drive
Suite 1100
West Palm Beach, FL 33401

**Attorneys for Aatrix Software, Inc.**