**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

Aatrix Software, Inc.,

Plaintiff, Case No. 3:15-cv-00164-HES-MCR

v.

Green Shades Software, Inc.,

Defendant.
_____________________________________________/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION**
**TO COMPEL PRODUCTION OF DOCUMENTS**

Defendant, Green Shades Software, Inc. ("**Greenshades**"), through counsel, responds to Plaintiff's Motion to Compel Production of Documents and Memorandum (the "**Motion**") as follows.

**INTRODUCTION**

This patent infringement lawsuit has been pending since May 25, 2015, and currently has an at-issue pending Motion to Dismiss addressing the fact that Plaintiff's patents are invalid pursuant to *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014). According to Plaintiff, this lawsuit relates to two patents currently held by Plaintiff and used by a product it licenses and sells which takes data inputted from users and creates a "viewable form" of an IRS form 940/941 which the user can print and file with the IRS (the **"Patents-in-Suit"**). By contrast, Greenshades's products which Plaintiff claim infringe the Patents-in-Suit (the "**Products-at-Issue**") do not create a "viewable form" within the meaning of the Patents-in-Suit but, instead, take payroll data, perform calculations, and transmit that information electronically to the IRS. Greenshades's

position has consistently been that the Patents-at-Issue are invalid under the test set forth in *Alice.* Further, Greenshades's position, in discussions with counsel for Plaintiff, has been that even if the Patents-at-Issue are found to be enforceable, the Products-at-Issue are non-infringing largely because the patent claims identified by Plaintiff as allegedly being infringed are all inextricably intertwined with having a "viewable form." Greenshades's Products-at-Issue do not have a "viewable form" feature. Therefore, even if the Patents-at-Issue are valid, there is no infringement.

Throughout the discovery period in this matter, Greenshades has been working with Plaintiff in an attempt to navigate the fine line of gathering information that is not only responsive to the request but fits within what is actually alleged in the lawsuit (infringement of a software program that creates a "viewable form") and that does not unnecessarily divulge information that is highly confidential and sensitive to a competitor. Obviously, Greenshades insisted upon and was able to negotiate a protective order.

However, the mere fact that a protective order is in place does not compel the conclusion that highly sensitive information such as customer names and data and financial information should be provided when it is not relevant to what is claimed. The protective order does nothing to prevent Plaintiff from going directly to Greenshades's customers and trying to set all of their depositions or otherwise harass them to interrupt Greenshades's business. Giving further concern to Greenshades, Plaintiff admits on page 13 of its Motion that it is not sure what "damage theory or methodology Plaintiff will pursue" in this lawsuit. Plaintiff is now being open about the fact that it is simply fishing for information. This is exactly what Greenshades has believed since being on notice of this lawsuit and the exact

reason why Greenshades has urged this Court to dismiss the lawsuit and not further entertain this fishing expedition.

Further, there is no legitimate reason proffered by Plaintiff to compel the production of customer names and data including customer financial information even if its Patents-in-Suit were enforceable. This is particularly true under the new discovery standards governing federal litigation requiring that discovery requests need not only be relevant, but also need to be "proportional to the needs of the case." Fed.R.Civ.P. 26 (Nov. 30, 2015).

Additionally, contrary to what Plaintiff suggests, Greenshades has been actively working toward gathering requested information appropriately and is not engaging in delay tactics. As set out in Plaintiff's Motion, Greenshades has been working to collect and process data and information in response to the written discovery since it was served. In undertaking that task, Greenshades's counsel has had to consult numerous custodians, and has searched for and gathered hard copy documents and collected over 850 GB of data from forensic images of its client's Sharepoint, Exchange and File Share servers for review[1]. (*See Exhibit A*.) At this point, and as promised, Greenshades has produced almost 150,000 pages of documents to Plaintiff. *Id.* Further, Plaintiff's expert has been in the offices of counsel for Greenshades since Wednesday, January 13, 2016 (18 business days as of the date of this response)[2]. Additionally, in November, Greenshades provided robust

[1] Unfortunately, there have also been corrupted files encountered which necessitated re-collection of images.
[2] The source code was available to Plaintiff beginning in December, but Plaintiff sent its expert to review the code, in accordance with the Protective Order, beginning mid-January. (*See Exhibit A*.) In fact, in a November 20th telephone conversation, Counsel for Greenshades indicated that the source code would be available the beginning of December for review. Originally it was going to be available the first week of December, but it was pushed back one week because of logistics required to comply with the Protective Order. Counsel for Plaintiff did not again address the subject until January. It was assumed that this delay was due to holiday schedules. On January 11th, during the next conversation amongst counsel, Counsel for Plaintiff relayed that the source code was still available and Plaintiff chose to begin its review on January 13th. *Id.*

responses to interrogatories while producing numerous attachments including an excel spreadsheet which Plaintiff improperly represents to be not useable[3]. This detailed spreadsheet provided detailed information revealing number of units sold or licensed on a monthly basis, gross revenue, net revenue, cost, gross profit and net profit attributable to the sales for the Products-at-Issue.

Unfortunately, this entire Motion contains overstated accusations about production of information by Greenshades and, equally troubling, starts from an assumption of an erroneous premise that "Plaintiff and Defendant both make and sell the same basic product, namely software components to be 'added on' to business accounting software such as Microsoft Dynamics, in order to make viewable forms available." (Motion, p. 19, emphasis added.) Greenshades's Products-at-Issue do not and have not made "viewable forms available" to its customer and it is the "viewable form" component of the product that is the focus of Plaintiff's Patents-In-Suit.

In this context and for the reasons more fully set out below, it is clear that Plaintiff's Motion is premature and overreaching and should be denied in its entirety.

**Factual Background**

Since this lawsuit was first brought to the attention of Greenshades, there have been significant discussion amongst counsel regarding discovery, claims definitions and other matters relative to this litigation. It has been made clear from numerous conversations,

[3] The spreadsheet was produced in a PDF format as there was no prior agreement that all data be provided in native or any specific format. A PDF production is the most reliable method of maintaining confidentiality and ensuring that appropriate markings pursuant to the Protective Order were affixed to each page. It was not until a subsequent phone call, on November 20, 2015, about Plaintiff's discovery concerns, where counsel for Plaintiff mentioned that he would prefer the file produced natively and Greenshades immediately agreed. However, counsel for Plaintiff also stated that he did not want "piecemeal production." Therefore, upon updating and supplementing interrogatory responses in the time agreed upon, the native file was provided. This 1800 pages of information largely identified for Plaintiff profits that Greenshades has realized based on the Products-at-Issue.

letters and pleadings, that Greenshades believes that Plaintiff's Patents-in-Suit are unenforceable in general and specifically against Greenshades. Regardless, Greenshades has been forced to spend significant hours and money searching for data and information relating to two of its products.

Despite Plaintiff's assertion in its Motion that Greenshades promised documents would be produced on any certain date, counsel for Greenshades has attempted to remain as transparent as possible and has always stated that he hopes to start getting certain documents out on a certain date[4]. Upon receiving written discovery from Plaintiff, it became clear that it would take significant time, efforts and money to respond to the

[4] There are a few specific misstatements in the "Factual Background" section of Plaintiff's Motion which do not ultimately affect the Motion, but which require correction. For example:

- On p.4, the box corresponding with October 7, 2015, Plaintiff's counsel states that: "Defendant's counsel advised that Greenshades had changed its software to avoid infringement." That is a completely inaccurate quote. Greenshades's counsel denies making that statement. Instead, what was relayed in the conversation was that the code changes from time to time and the most recent change was done in a manner to further render Greenshades's product unlike an official IRS Form 940 or 941. (*See Exhibit A*.)
- On p. 5, in the first box, Plaintiff's counsel asserts that Counsel for Greenshades indicated that they would be in a position on October 30th to "say how long that review would take and when production could be expected." This is close to what was stated, but is overreaching. What was said was that Greenshades' counsel hoped to be in a position to know how long review would take and when production could take place. *Id.*
- On p. 5 in the box corresponding to Nov. 3 & 4, counsel for Plaintiff states "Defendant's counsel indicated they had only performed computerized searches at that point and had not collected any documents because the searches had returned 2.2 million documents." At that point, counsel for Greenshades relayed that they had collected 2.2 million documents and were attempting to find appropriate ways to search those documents with more relevant and refined search terms. The purpose of the telephone call on November 3rd was precisely to do that so that the searching could be more productive. Unfortunately, counsel for Plaintiff did little to refine his broad requests.
- On p. 5, Plaintiff's counsel states "production of Defendant's source code was to have commenced in Jacksonville on December 7th. … Defendant cancelled." This is inaccurate. Greenshades never canceled. Instead, counsel for Greenshades told counsel for Plaintiff in the November 29th discussion that the source code availability would be delayed by about a week. *Id.*
- On p. 6, Plaintiff's counsel states that production of documents was to have commenced on December 14th. Counsel for Greenshades had stated that they hoped to be in a position to begin production of documents around the week of December 14th. Thereafter, in the same conversation, Counsel for Plaintiff stated that he did not want piecemeal production. *Id.*

requests. Thus, the parties began talking relatively quickly about setting up calls about discovery, both sides realizing that production of documents could never be accomplished on a thirty (30) day timetable due to the sheer volume of information to go through.

In the first call about discovery, counsel for Greenshades was upfront about the anticipation that it would take significant time to be able to respond appropriately. By October 30th, Greenshades served its Answers to Interrogatories including a significant excel file including financial data which, when converted to a PDF file, was approximately 1800 pages long. Counsel for Greenshades then sought assistance from counsel for Plaintiff to narrow his requests because of the large number of documents that were being returned when searching for responsive documents. However, counsel for Plaintiff did not limit his requests. On November 6th, as agreed, written responses and objections to Requests for Production were served. Meanwhile, in collecting additional servers from Greenshades, there were several delays described by forensic experts as unpredictable[5].

Finally, by February 5th, a significant portion of documents were able to be reviewed and produced to Plaintiff which amounted to over 8 GB of data and almost 150,000 pages being produced. Those documents produced include financial information, marketing materials, reseller agreements, product release dates and files, price lists, market research and system requirements. (*See, Exhibit A*.)

Now, despite the ongoing significant efforts, Plaintiff is seeking finalization of production within ten (10) days including all identification of customer names and addresses. Greenshades has offered to and working toward production of all information

[5] Greenshades engaged a local forensic expert to collect a forensic image of three servers – one of which contained over 11 million files. Those files had to be processed and indexed to be loaded onto an e-discovery platform. Upon loading, Greenshades's counsel could begin targeted searches of those servers. Upon returning a manageable number of responsive documents, a privilege and confidentiality review can occur.

that contains customer identifying information with redaction of such information in order to alleviate concerns of misuse of such information. Specifically, Greenshades is concerned with Plaintiff's intention to directly contact or otherwise harass Greenshades customers and disrupt their business.

**Greenshades's Specific Customer Identifying Information is Not Relevant and Should Not be Compelled Due to Plaintiff's Clear Intention to Harass Greenshades's Customers**

Upon considering a Rule 37 Motion, this Court must typically decide whether certain objections to discovery are appropriate. Focusing on the discovery requesting identification of Greenshades's customers, Greenshades has objected to such production because it is overly broad and not relevant. Greenshades contends that there is no permissible reason for Plaintiff to want this information and is concerned that such information will be used only to contact Plaintiff's customers and disrupt Greenshades's business.

Plaintiff's Motion basically boils down to its desire to have exact names and contact information for Greenshades's customers. Greenshades has already and is willing to provide additional information about sales of the allegedly infringing products, but contends that the specific names and contact information for direct customers will only lead to Plaintiff harassing Greenshades customers to attempt to trump up additional direct suits for alleged patent infringement against those customers[6]. Despite the fact that Greenshades is willing to and intends to provide information about its customers while

---

[6] As this Court is aware, the increase in direct patent infringement suits directly against technology customers is staggering. Numerous Attorney Generals have initiated their own actions, and Congress and the President have also proposed solutions to curbing such abuses. *See*, Ryan Davis, "Patent Trolls May Change Tactics After State AGs Get Touch" IPLaw360, August 29, 2013 (describing actions by AGs in Vermont, Nebraska and Minnesota (where Aatrix is headquartered)); *See* H.R. 2639, The Patent Litigation and Innovation Act of 2013.

redacting names (other than resellers) and contact information, Plaintiff wants more. Yet there is no legitimate reason to compel this production.

Instead, under the new standard for discovery in effect as of November 30, 2015, Plaintiff's proffered reasons for wanting this information become even less compelling. While Greenshades agrees that volume of sales, evidence of share in the marketplace, growth in the market share, dollar amounts etc. of allegedly infringing products may be discoverable in a patent infringement lawsuit, the names of customers is not relevant to Plaintiff's ability to prove any damages and, the risk of Plaintiff using such information in a manner that will harass a defendant's customers outweighs any probative value that such information may provide. The marketing, price, profit and market share information has been produced. There is nothing else described by Plaintiff in its Motion that it needs by way of customer name.

Specifically, as set out above, prior to this Motion, Greenshades had provided a spreadsheet with 1800 pages of information about sales information including cost and profit information and has additionally continually updated Plaintiff about efforts to produce additional documents. While Greenshades was not able to produce additional documents until February 5th, such production consisted of over 8 GB of data and almost 150,000 pages. To date, Greenshades believes that most, if not all, of data relating to sales and profits directly has been produced including marketing materials, market research and reseller agreements relating to the Products-at-Issue. Ignoring all this, Plaintiff still wants more – it wants the names of Greenshades customers.

In a patent litigation lawsuit, on the one hand, discovery is "[c]learly" permitted "to flesh out a pattern of facts already known to a party relating to an issue necessarily in the

case." *Micro Motion Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1326 (Fed.Cir. 1990). "At the other extreme, requested information is not relevant ... if the inquiry is based on the party's mere suspicion or speculation." *Id.* The threshold requirement of relevance is not the only issue that must be addressed in an inquiry as to whether a party should obtain discovery. Federal Rule 37 also requires consideration of other factors, including the extent to which the discovery requests will burden the producing party (and how that burden compares to the likely benefit of the discovery), whether the party seeking discovery has had ample opportunity to obtain the information, and the ease with which that requesting party can obtain the information on its own. *Invensas Corp. v. Renesas Electronics Corp.*, 287 FRD 273, 278-9 (D.Del. 2012).

However, establishing infringement does not require knowing highly sensitive information of customer names and contact information because the claim of infringement focuses on the activities of a defendant, not on the customers. *See Chubb Integrated Sys. Ltd. v. Nat'l. Bank of Washington*, 103 F.R.D. 52, 57 (D.D.C. 1984) (denying defendant's request for customer identity information but granting request for sales information as relevant to commercial success in patent infringement case and stating, "to the extent that [the request] seeks the number of customers, but not the names, it is an appropriate inquiry"); *Murata Mfg. Co., Ltd. v. Bel Fus Inc.*, No. 03 C 2934, 2004 WL 1194740, at *6 (N.D. Ill. May 26, 2004) ("Particularly significant is the fact that Murata is unable to cite a single case in which testimony from a customer of the alleged infringer was used to show commercial success or long-felt need. In contrast, Bel Fuse has demonstrated a legitimate concern that its business could suffer substantial harm if its customers are dragged into this case as witnesses.").

In arguing that it needs customer names to establish direct competition, one argument Plaintiff offers is that customer names are "relevant to its analysis to show loss of sales in 'head-to-head' competition", to show potential "improper marketing activities" or to show "actual direct competition." (Motion, p. 15.) However, none of these theories, even if present in this lawsuit, require specific customer identification.

Similar to the conclusion by the Court in *Chubb Integrated Sys. Ltd. v. Nat'l. Bank of Washington*, 103 F.R.D. 52 (D.D.C. 1984), where customer identification found, the information produced back in November and supplemented recently by Greenshades accomplishes the same goal without exposing the threat of potential customer harassment. If there is head-to-head competition or actual direct competition, Plaintiff knows its marketing efforts and can easily contact those potential consumers who did not end up doing business with Plaintiff. Further, Greenshades's marketing information was provided. Thus, there is no need for the additional burden of compelling production of customer names in order to allow for discovery of competition.

Plaintiff next argues on pages 17 and 18 of its Motion that customer information may be relevant because "it may constitute admissible evidence" and in order to establish the "lack of noninfringing substitutes." Plaintiff relies upon a case from Pennsylvania where the defendant therein specifically indicated that it would be presenting evidence of acceptable non-infringing alternatives. *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C.*, 2002 U.S. Dist. LEXIS 11522, *11, 13 (E.D.Pa. 2002). Here, Greenshades has certainly not indicated an intention of presenting evidence of acceptable non-infringing alternatives as a defense. Instead, Greenshades's Motion to Dismiss is still pending.

Over the next two pages of its Motion (pp. 17-18), Plaintiff begins from a faulty premise which makes its arguments inapplicable. Despite admitting, on page 17 at the top, that "Greenshades might, hypothetically, sell software that does not provide the viewable form functionality…" on pages 17 to 18, Plaintiff argues that it needs identification of customers so it can ask the customers if it purchased Greenshades's software that provides a "viewable 940/941 form." Plaintiff further argues that, "if there is sufficient evidence of customer comments stating that the viewable form functionality is important to them… it would not be acceptable to switch to a noninfringing substitute that does not offer the feature." (p. 18.)

These assertions, put together are not only circular and illogical, but advance the very concern that Greenshades has – that Plaintiff believes that it is entitled to customer names and contact information <u>even if Greenshades's software does not infringe.</u> Again, despite Plaintiff's comment in the middle of page 18 that "information identifying specific customers is discoverable in order to show whether 'specific purchasers of the infringing product purchased' on the basis of patented features," the fact that Greenshades's products do not have the "patented features" precludes the application of this logic.

Plaintiff next resorts to an argument that customer information is relevant to "the issue of apportionment." Plaintiff argues that because the Products-at-Issue are part of a software bundle when purchased or licensed from Greenshades, it will have to address whether the "patent-related feature" is the basis for the customers' demand for the overall product. Even if there were a "patent-related feature" to the Products-at-Issue, getting the names of customers would do nothing to address any concerns of apportionment given the

fact that Plaintiff already has marketing information, market share information, sales data, cost and profit data.

Last, Plaintiff argues that the failure to disclose the names of customers hinders discovery. Frankly, the need to redact customer information from a few of the hundreds of thousands of documents is one of the smallest tasks required in responding to the expansive discovery requests that were propounded by Plaintiff. Plaintiff uses the fact that Greenshades's attempt to narrow the universe of responsive documents produced a search set of over 2.2 million documents against it. However, at the time, Plaintiff did not want to engage in a narrowing of its discovery requests, but insisted, instead, on allowing the normal review to go forward. Now, Plaintiff complains that this is taking too long. The bottom line is that Greenshades has now produced thousands of documents, allowed an ongoing review of its source codes and has been compliant in responding to Plaintiff's concerns raised about alleged deficiencies.

Plainly put, Greenshades's objections should be sustained and Plaintiff's Motion should be denied[7].

---

[7] In the alternative, Greenshades requests that this Court enter an order precluding Plaintiff from initiating contact with Greenshades's customers for any purpose relating to this litigation at least until the pending Motion to Dismiss is resolved. *See, Volkswagenwerk Aktiengesellschaft v. Westburg*, 260 F.Supp. 636, 637 (E.D.Pa. 1966) (granting order precluding plaintiff from imitating contact with defendant's customers regarding subject matter of litigation); *May Coating Tech., Inc. v. Illinois Tool Works*, 157 F.R.D. 55, 57 (D.Minn. 1994) (ordering patent holder to refrain from directly contacting alleged infringer's customers for any purpose relating to litigation.) Here, at least this minimal protection should be afforded given. If Greenshades's customers are contacted en masse by Plaintiff as Plaintiff announces in its Motion, there will be certain disruption of Greenshades's business. At the very least, some if not most of the customers will question Greenshades as to why they are being contacted and, at worst, the customers will unnecessarily be driven away from Greenshades as a service provider. Should the Motion to Dismiss be granted and this Court ultimately agrees with Greenshades that the patent was unenforceable or that Greenshades's products do not infringe, such disruption of business will be wholly improper.

**Plaintiff's Requests With Respect to Requests 22 and 24-26 Are Unnecessary**

Plaintiff also addresses in its Motion some concerns relating to Requests 22, and 24-26. There is no mistake, as Plaintiff states, that Greenshades's objections to the discovery requests are exactly what they say. The intent, as explained to Counsel for Plaintiff, is to produce relevant documents, sans customer identification information, that responds to the requests as drafted to the extent possible given the wording of the requests. For example, as drafted, Request 22 seeks "all documents that relate to any offer for sale or sales related proposal…" This may, for example, request customer financial information which Greenshades does not intend to provide. Further, the Product-at-Issue is a service which can be purchased online by a customer who navigates to the webpage and clicks in the right place. Thus, there is no real "offer for sale" to those customers and, for those customers, this request makes little sense. Therefore, appropriate objections were asserted.

**Plaintiff's Request for Costs Should Be Denied and Is Excessive**

Last, Plaintiff requests over $28,000 in fees based on this Motion. Such request should be denied. Under Rule 37(a)(5)(ii), a Court cannot order payment of a movant's attorneys' fees and expenses when the opposing party's response or objection was substantially justified. The U.S. Supreme Court has stated that "substantially justified" means "there is a genuine dispute." *Pierce v. Underwood*, 487 U.S. 552 (1988); *See also Maddow v. Proctor & Gamble Co., Inc.*, 107 F.3d 846 (11th Cir. 1997) (reversing award of attorneys' fees on a motion to compel because while the information sought was compelled to be produced, it was abuse of discretion to award fees when there was case law supporting plaintiff's position resisting the discovery). Here, at the very least, there is a genuine

dispute. Further, even if Plaintiff's Motion was meritorious and even if there was not a genuine dispute, Plaintiff's request of over $28,000 for a motion on one topic is extreme. Plaintiff has presented no evidence that his requested rate of $500 is reasonable or that the time he spent allegedly drafting and researching this Motion is reasonable. Instead, spending 56 hours on a single motion is on its face excessive.

**CONCLUSION**

As set forth above, Plaintiff's Motion to Compel Production of Documents is due to be denied. Greenshades further requests that it be awarded its reasonable attorneys' fees and costs for having to respond to this Motion pursuant to Fed.R.Civ.P. 37(a)(5)(B) and requests an opportunity to present evidence of reasonable fees and costs.

Dated: February 8, 2016

/s/ H. Timothy Gillis

Ethan A. Way, Trial Counsel
Florida Bar No. 148199
H. Timothy Gillis, Trial Counsel
Florida Bar No. 133876
Nancy A. Johnson, Trial Counsel
Florida Bar No. 0597562
Gillis Way & Campbell
1022 Park Street, Suite 308
Jacksonville, Florida 32204
Phone: (904) 647-6476
Fax: (904) 738-8640
eway@gillisway.com
tgillis@gillisway.com
njohnson@gillisway.com
*Attorneys for Green Shades Software, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 8, 2016, I electronically filed the foregoing with the Clerk of Court pursuant to the Administrative Procedures for Electronic Filing in Civil and Criminal Cases of this Court by using the CM/ECF System which will send a notice of electronic filing to the following:

John B. Lunseth
Briggs and Morgan, P.A.
80 South Eighth Street
2200 IDS Center
Minneapolis, MN 55402-2157
jlunseth@briggs.com
*Attorneys for Plaintiff Aatrix Software, Inc.*

Joanne M. O'Connor
Jones, Foster, Johnston & Stubbs, PA
505 S Flagler Dr - Suite 1100
PO Box 3475
West Palm Beach, FL 33402-3475
joconnor@jones-foster.com
*Attorneys for Plaintiff Aatrix Software, Inc.*

/s/ H. Timothy Gillis
H. Timothy Gillis