UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AATRIX SOFTWARE, INC.,

      Plaintiff,

v.                                    **Case No. 3:15-cv-164-HES-MCR**

GREEN SHADES SOFTWARE, INC.,

      Defendant.

_____/

## ORDER

Before the Court is Defendant's "Dispositive Motion to Dismiss Amended Complaint Under 35 U.S.C. § 101" (Doc. 20, filed July 15, 2015), and Plaintiff's Response in opposition thereto (Doc. 25, filed Aug. 12, 2015). The Court held a hearing on Defendant's motion on October 21, 2015. Upon consideration of the Parties' filings, oral argument, and the relevant case law, the Court determines the following.

## I. BACKGROUND

Plaintiff Aatrix Software, Inc. ("Aatrix") is the assignee and owner of two patents, both of which are entitled "Method and Apparatus for Creating and Filing Forms." (Docs. 7-1, 7-2). Aatrix filed a patent application on March 26, 2002, and United States Patent No. 7,171,615 (the " '615 Patent") was duly and legally issued to Aatrix on January 30, 2007. (Doc. 7-1). Aatrix filed a second patent application on January 26, 2007, and United States Patent No. 8,984,393 (the " '393 Patent") was duly and legally issued to Aatrix on March 17, 2015, as a continuation of the '615 Patent. (Doc. 7-2). The patents at issue disclose Aatrix's invention, which is a "data processing system"—i.e., computer application software—that designs and creates computerized

forms for use with third-party business accounting software to facilitate the completion and filing of forms with federal and state governmental agencies. (Doc. 7-1, col. 1–2; Doc. 7-2, col. 1–2).

Aatrix filed suit against Defendant Green Shades Software, Inc. ("Green Shades") on February 13, 2015, and filed its Amended Complaint on May 15, 2015, alleging that Green Shades has infringed and is still infringing both the '615 and '393 Patents "by making, selling, and using methods and apparatuses that embody the patented invention" in Green Shades' software products. (Doc. 7, ¶¶ 10, 17). Green Shades' products at issue in this lawsuit are the Green Shades Tax Filing Center ("TFC"), which is the product name for an installed software package, and the Green Shades Payroll Tax Service ("PTS"), which is the product name for software accessed and used over the Internet. (*Id.* ¶ 5). Both products are made, offered for sale, and sold or licensed by Green Shades. (*Id.*).

In response to the Amended Complaint, Green Shades filed the present Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that both the '615 and '393 Patents are invalid because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101. (Doc. 20 at 1). Green Shades argues that the claimed patents are directed to "an abstract idea using generic computer functionality," and thus, "do not constitute patent-eligible subject matter under Section 101 as a matter of law." (*Id.* at 2). Specifically, Green Shades states that the claims of the patents in suit "are drawn to the basic concept of data recognition and storage," and that the claims "are really just the application of a generic computer and a generic network to a fundamental human activity: filling out tax forms by hand with information from a ledger using a pen and paper." (*Id.* at 19, 21). Green Shades asserts that Aatrix has failed to state a claim upon which relief may be granted and asks the Court to dismiss this suit in its entirety.

Aatrix argues in its Response in opposition that the motion should be denied because an assessment of validity is premature, as the Court has not been provided with "a full understanding of the basic character of the claimed subject matter." (Doc. 25 at 14). As such, Aatrix argues that the Court should permit claim construction to go forward before assessing the validity of the claimed patents. (*Id.*). Alternatively, Aatrix argues that (1) the claimed patents are not directed to an abstract idea, (2) if the claimed patents are directed to an abstract idea, the "correct" abstract idea is different than the abstract idea(s) that Green Shades puts forth, and (3) if the claimed patents are directed to Aatrix's "correct" formulation of the abstract idea, the claims of both patents, when read individually and as an ordered combination, are sufficiently specific and limited to contain an inventive concept that transforms the abstract idea into a patent-eligible application of that idea.

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), Rule 8(a)(2) requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In interpreting this pleading standard, the Supreme Court has explained that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is not necessary that the complaint demonstrate that the defendant's liability is more probable than not; nevertheless, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing a motion to dismiss, the Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Hill v. White*,

3

321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). Furthermore, courts are "generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss." *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). However, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleading for purposes of Rule 12(b)(6) dismissal." *Id.* (citation and internal quotation marks omitted).[1]

The issue of patent eligibility under 35 U.S.C. § 101 is a question of law. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). As such, the Federal Circuit has confirmed that courts may examine at the pleading stage whether a patent is directed to eligible subject matter under § 101. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

Nevertheless, there is currently confusion among district courts regarding the proper standard of proof to apply to eligibility challenges under § 101. This confusion arose in the wake of the Supreme Court's most recent opinion addressing the "presumption of validity," which is the statutory principle (originating in the common law) that every patent and each claim of a patent is presumed valid. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245-47 (2011) (citing 35 U.S.C. § 282). In *Microsoft Corp.*, the Supreme Court confirmed that the presumption of validity (1) places the non-shifting burden of persuasion on the party challenging validity and

---

[1] On September 10, 2015, the Court issued an Order denying Green Shades' Motion to Stay Discovery and Motion for Leave to File a Reply. (Doc. 37). That Order also struck the Declarations of A. Dale Jensen and John B. Lunseth (Docs. 26, 27), which were filed in support of Aatrix's Response in opposition to the Motion to Dismiss, based on the fact that the declarations are not central to Aatrix's claims. However, much of the history and background information about the patents at issue that is contained in the declarations is also found in the "Background of the Invention" sections of the patents themselves. (Doc. 7-1 at 8; Doc. 7-2 at 9). Likewise, the Court will not consider the evidence introduced at the hearing by Aatrix that falls outside of the four corners of the complaint.

(2) requires the challenger to establish invalidity by a heightened "clear and convincing" evidentiary standard of proof. *Id.* at 2246. Thus, because the "clear and convincing" evidentiary standard applies to questions of fact, courts have grappled with the applicability of this principle to eligibility challenges under 35 U.S.C. § 101, which, as noted, is a question of law. *See, e.g.,* *StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*, No. 8:13-cv-2240-T-33MAP, 2015 WL 518852, at \*2 (M.D. Fla. Feb. 9, 2015) (applying the clear and convincing evidentiary standard at the motion to dismiss stage); *Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 978 & n.6 (C.D. Cal. 2014) (discussing the ambiguity behind the issue at the motion for summary judgment stage); *cf. FairWarning IP, LLC v. Iatric Sys., Inc.*, No. 8:14-cv-2685-T-23MAP, 2015 WL 3883958 (M.D. Fla. June 24, 2015) (failing to address the proper standard of proof before finding that the patent was directed to an abstract idea and granting the defendant's motion to dismiss).

This confusion is misplaced. The Federal Circuit long ago applied the presumption of validity to statutory subject-matter questions under § 101, stating that while an eligibility challenge presents a question of law, "determination of this question may require findings of underlying facts specific to the particular subject matter and its mode of claiming." *Arrhythmia Research Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053, 1055-56 (Fed. Cir. 1992). In *Microsoft Corp.*, Justice Sotomayor, writing for the majority, stated similarly, "While the ultimate question of patent validity is one of law, the same factual questions underlying the PTO's original examination of a patent application will also bear on an invalidity defense in an infringement action." *Microsoft Corp.*, 131 S. Ct. at 2242-43 (citations and internal quotation marks omitted). The holding in *Microsoft Corp.*, when considered in conjunction with *Arrhythmia*, is straightforward: Every patent and each claim of a patent is presumed valid under § 282(a), and if

a patent or any claim thereof is being challenged on one or more grounds, then any questions of fact presented must be proven by the party asserting invalidity by clear and convincing evidence. If there are no underlying questions of fact involved—and only questions of law are presented— then the clear and convincing evidentiary standard does not apply. *See, e.g., Arrhythmia*, 958 F.2d at 1055-56 (explaining that determination of subject-matter eligibility under § 101 may require findings of underlying facts, but that in the case presented, there were no disputed material facts).

As subject-matter eligibility under § 101 is a question of law that may be properly addressed at the pleading stage, the Court shall proceed to do so now. The burden of persuasion rests with Green Shades to prove such ineligibility. To the extent there are any underlying disputed factual questions presented in this challenge, the Court shall apply the clear and convincing evidentiary standard of proof.[2]

## III. ANALYSIS

### A. 35 U.S.C. § 101

Section 101 of the Patent Act defines the subject matter eligible for patent protection, which is described as the invention or discovery of "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C.

---

[2]   Judge Mayer of the Federal Circuit wrote a well-cited concurrence after *Microsoft Corp.* that argues no presumption of validity attaches to § 101 challenges. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 720-21 (Fed. Cir. 2014) (Mayer, J., concurring). This is because the question of eligibility is " 'a threshold test' . . . that must be satisfied before a court can proceed to consider subordinate validity issues." *Id.* at 718 (quoting *Bilski v. Kappos*, 561 U.S. 593, 602 (2010)). Judge Mayer also noted that, "[a]lthough the Supreme Court has taken up several section 101 cases in recent years, it has never mentioned—much less applied—any presumption of eligibility." *Id.* at 721. Green Shades cites Judge Mayer's concurrence in support of its argument that the presumption of validity does not apply to § 101 challenges. Perhaps Judge Mayer's concurrence is persuasive, but it is not the law. Precedent clearly establishes that the presumption applies to all patents at all times for all purposes.

§ 101. The Federal Circuit has explained, "For all categories [of patent-eligible subject matter] except process claims, the eligible subject matter must exist in some physical or tangible form." *See, e.g., Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1348 (Fed. Cir. 2014). In other words, in order to qualify under § 101, a claim directed to a "machine, manufacture, or composition of matter" must exist in some physical, tangible form. *Id.* at 1348-49. As to "process claims," the Supreme Court has explained,

> A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing. If new and useful, it is just as patentable as a piece of machinery. In the language of the patent law, it is an art. The machinery pointed out as suitable to perform the process may or may not be new or patentable; whilst the process itself may be altogether new, and produce an entirely new result. The process requires that certain things should be done with certain substances, and in a certain order; but the tools to be used in doing this may be of secondary consequence.

*Diamond v. Diehr*, 450 U.S. 175, 183-84 (1981) (citation and internal quotation marks omitted).

The Supreme Court has recognized three judicially-created "important implicit exception[s]" to the Patent Act's subject matter eligibility requirements: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (citation and internal quotation marks omitted). "[T]he concern that drives this exclusionary principle [is] one of pre-emption," that is, " 'that patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012)). Nonetheless, the Supreme Court has cautioned that courts must "tread carefully in construing this exclusionary principle lest its swallow all of patent law." *Id.* (citing *Mayo*, 132 S. Ct. at 1293-94). "[A]n invention is not rendered ineligible for patent simply because it involves

7

an abstract concept. . . . Applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Id.* (citations and internal quotation marks omitted).

In *Alice*, the Supreme Court clarified and reaffirmed the framework first articulated in *Mayo*, for distinguishing patents that are subject-matter eligible under § 101 from those patents that are directed to an ineligible exception. *Alice*, 134 S. Ct. at 2355 (citing *Mayo*, 132 S. Ct. 1289). First, the Court must determine "whether the claims at issue are directed to a patent-ineligible concept." *Id.* If so, step two requires the Court to "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application" of that idea. *Id.* at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298). The "inventive concept" is described as "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 2355 (quoting *Mayo*, 132 S. Ct. at 1294).

In *Alice*, the Supreme Court invalidated several "business methods" patents that disclosed a computer-implemented scheme for mitigating "settlement risk." *Id.* at 2351-52. The claims were "designed to facilitate the exchange of financial obligations between two parties by using a computer system as a third-party intermediary." *Id.* at 2352. The Court explained that the claims were directed to the abstract concept of "intermediated settlement, *i.e.*, the use of a third party to mitigate settlement risk." *Id.* at 2356. This concept is "a fundamental economic practice long prevalent in our system of commerce," and "[t]he use of a third-party intermediary . . . is also a building block of the modern economy." *Id.* (citations and internal quotation marks omitted). Accordingly, the *Alice* Court determined that the claims at issue were directed to an abstract idea, and it proceeded to step two of the analysis.

8

At step two, the Court explained that "the elements of each claim both individually and 'as an ordered combination' " must be considered "to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 2355 (quoting *Mayo*, 132 S. Ct. at 1297-98). Step two can be described "as a search for an inventive concept." *Id.* In other words, the claims "must include 'additional features' to ensure" that the claim does not monopolize and preempt the abstract idea. *Id.* at 2357 (citation omitted). The "transformation into a patent-eligible application requires 'more than simply stating the abstract idea while adding the words 'apply it.' " *Id.* (quoting *Mayo*, 132 S. Ct. at 1294). Further, "limiting the use of an abstract idea 'to a particular technological environment' " is insufficient to transform the abstract idea. *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). The implementation of a generic computer simply combines these two principles and does not, by itself, supply the inventive concept. *Id.* (reviewing analogous cases).

The *Alice* Court noted that the method claim elements, taken separately, described computer functions that are "purely conventional." *Id.* at 2359. "Conventional" or "generic" computer functions include "electronic recordkeeping . . . , obtain[ing] data, adjust[ing] account balances, and issu[ing] automated instructions; all of these computer functions are 'well-understood, routine, conventional activities' previously known to the industry." *Id.* (quoting *Mayo*, 132 S. Ct. at 1294). Requiring "a generic computer to perform generic computer functions" at each step does not supply an inventive concept. *Id.* When considered "as an ordered combination," the method claim elements did not "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *Id.* (citations omitted). As such, the Supreme Court held that the method claims "amount[ed] to nothing significantly more than an instruction to apply the abstract idea of intermediated

settlement using some unspecific, generic computer." *Id.* at 2359-60 (citation and internal quotation marks omitted). Thus, the Court held those claims to be ineligible under § 101.

It is important to understand what the *Alice* Court meant when it explained that courts "must first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. The term "directed to" is a term of art meaning "recited by the claims." *Id.* at 2356. The United States Patent and Trademark Office ("USPTO"), in its "2014 Interim Guidance on Patent Subject Matter Eligibility" issued in the wake of *Alice*, explains that " '[d]irected to' means the [abstract idea] is recited in the claim, *i.e.*, the claim sets forth or describes the [abstract idea]." USPTO, 2014 Interim Guidance on Patent Subject Matter Eligibility, at 10 (2014), *available at* http://www.uspto.gov/sites/default/files/documents/training%20-%202014%20interim%20guidance.pdf. "If the invention is merely based on or involves an [abstract idea], but the [abstract idea] is not set forth or described in the claim, the claim is not directed to an exception and is eligible." *Id.* at 11; *see also Digitech*, 758 F.3d at 1350 ("A claim may be eligible if it includes additional inventive features such that the claim scope does not solely capture the abstract idea."). The invention disclosed in the claims themselves govern the Court's analysis, and the Court must distill the claims to discover an abstract idea. Generally, the Court does not consider the preamble of a claim, which may summarize the type of invention recited in the body of the claim or identify a function or purpose of the invention. *See, e.g., Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) ("Preamble language [of a claim] that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim."). The preamble of a claim is a substantive limitation on the scope of the claimed invention, however, where it "recites essential

10

structures or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1347 (Fed. Cir. 2002) (citation omitted).

Recently, the United States District Court for the District of Delaware issued a detailed opinion that clearly organized and summarized the "evolution of the § 101 jurisprudence, from the complete rejection of patentability for computer programs to the almost complete acceptance of such, to the current (apparent) requirements." *Motivation Innovations, LLC v. Petsmart, Inc.*, – F. Supp. 3d – , 2016 WL 141621, at *5 (D. Del. Jan. 12, 2016) (citations omitted). The court noted that "even though most of the patent claims now being challenged under § 101 would have survived such challenges if mounted at the time of issuance, these claims are now in jeopardy under the heightened specificity required by the Federal Circuit post-*Alice.*" *Id.* The court went on to explain:

> In trying to sort through the various iterations of the § 101 standard, the court looks to *DDR* as a benchmark; i.e., the claims (informed by the specification) must describe a problem and solution rooted in computer technology, and the solution must be (1) specific enough to preclude the risk of pre-emption, and (2) innovative enough to "override the routine and conventional" use of the computer.

*Id.* (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258-59 (Fed. Cir. 2014)).

With these principles in mind, the Court turns to the patents at issue in this case. Green Shades relies on *Mayo*, *Alice*, and subsequent district court and Federal Circuit decisions issued in *Alice*'s wake to support its argument that Aatrix's patents are directed to a patent-ineligible abstract idea and are thus invalid as a matter of law. The Court has extensively reviewed the '615 and '393 Patents and has a "full understanding of the basic character of the claimed subject matter." *Bancorp Servs., LLC v. Sun Life Assur. Co. of Can.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). As such, the Court will proceed to analyze the claimed patents' eligibility under § 101.

## B. The '615 Patent

In patent infringement actions wherein the defendant challenges the eligibility of the patent at issue under § 101, the parties sometimes stipulate that one (or more) of the claims is a representative claim that may be used to analyze the subject matter and scope of the patent. In this case, Green Shades asserted in its Motion to Dismiss that Claims 1, 11, and 22 are the independent, and thus representative, claims of the '615 Patent. Aatrix disputed this conclusion in its Response in opposition, and at the hearing on the motion, Aatrix asserted that Claims 1 and 22 are the independent claims which Green Shades is alleged to have infringed. Accordingly, the Court will proceed to analyze Claims 1 and 22 as the representative claims. Claim 1 of the '615 Patent is an apparatus claim. It claims:

1. A data processing system for designing, creating, and importing data into, a viewable form viewable by the user of the data processing system, comprising:
   (a) a form file that models the physical representation of an original paper form and establishes the calculations and rule conditions required to fill in the viewable form;
   (b) a form file creation program that imports a background image from an original form, allows a user to adjust and test-print the background image and compare the alignment of the original form to the background test-print, and creates the form file;
   (c) a data file containing data from a user application for populating the viewable form; and
   (d) a form viewer program operating on the form file and the data file, to perform calculations, allow the user of the data processing system to review and change the data, and create viewable forms and reports.

(Doc. 7-1, col. 19, ll. 59 – col. 20, ll. 9).

As an apparatus or system claim, Claim 1 defines the claimed invention in terms of its component parts. Broken down, Claim 1 describes the system's main components and functions of said components. Aatrix asserts that Claim 1 is directed to specific components, and that these components further have specific characteristics and limitations. Accordingly, Aatrix

12

argues that Claim 1 is not directed to an abstract idea at all, but rather, it is directed to specific components that, when taken together, form the whole patented invention.

Claim 22 of the '615 Patent is a method claim. It claims:

22. A method for designing, creating, and importing, on a digital computer having a memory and a processor executing a stored program, data into, a viewable form viewable by the user of a data processing system, the viewable form replicating a paper form, comprising the steps of:
   (a) a form designer executing a forms designer program in the digital computer, the forms designer program allowing the form designer to create a form file that, when subsequently printed, will exactly match an original paper form and will permit calculations and rule conditions required to fill in the form;
   (b) executing a data file importing program in the digital computer, the data file importing program seamlessly importing data from an end user application program into a data file; and
   (c) subsequently an end user executing a forms viewer program, the forms viewer program generating a viewable form by merging data in the data file with specific fields in the form file, allowing the user of the data processing system to review and change the data, performing calculations on the data, and generating a report that exactly matches the original paper form.

(Doc. 7-1, col. 21, ll. 30-51).

As a method claim, Claim 22 defines the claimed invention in terms of how it is done. Broken down, Claim 22 contains steps and functions of the system components used at each step. Aatrix asserts that Claim 22 describes a complex, multi-step process that is not directed to an abstract idea.

Green Shades asserts that, by distilling the details of Claims 1 and 22 of the '615 Patent, the claims are directed to the same abstract idea: the fundamental human activity of filling out forms and filing them, which can be accomplished by a human using a pen and paper.[3] This test

---

[3]   Aatrix asserts in its Response in opposition that Green Shades set forth two separate and conflicting "abstract ideas" in its Motion to Dismiss. (Doc. 25 at 10). However, the Court finds that Green Shades has only set forth one abstract idea in its Motion to Dismiss, and Green Shades only argued one abstract idea at the hearing. Early in the motion, Green Shades asserted

"ask[s] whether the claims' steps 'can be performed in the human mind, or by a human using a pen and paper.' " *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)). Further, "[t]he pen-and-paper test does not require described electronic components to literally exist on paper: instead, it is an analytical tool to test whether the underlying concept described in the claims is abstract." *Id.* (citations omitted). Indeed, "a claim directed to an abstract idea does not move into section 101 eligibility territory by 'merely requiring generic computer implementation.' " *Id.* (quoting *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014)).

In the alternative, Aatrix argues that the claimed patents are directed to the abstract idea of "creating and filling out computerized forms," and that the '615 Patent enables forms to be created and filled out on a generic computer. (Doc. 25 at 16). That being the case, Aatrix further argues that the claims recited in the '615 Patent do not preempt "the entire abstract idea of creating and filling out forms;" rather, the claims "instruct a specific way and exactly how to make and use forms on a computer." (*Id.*). Aatrix asserts that the claims "employ specific structures or steps that not in the prior art" that form the "inventive concept" required at step two of the *Mayo* test. (*Id.* at 16-18).

As an initial matter, it is important to distinguish the nature of Claims 1 and 22; Claim 1 is an apparatus claim that describes the claimed components of the patented invention, and Claim

---

that the patents "are directed toward the abstract idea of designing, creating, calculating, and importing data into, an electronic form on a generic computer connected to a generic network that replicates a paper form and is viewable, editable, and able to be printed or electronically transmitted, by a user of that generic computer." (Doc. 20 at 3, 9-10). Later in the motion, Green Shades summarized the aforementioned abstract idea by stating, "In other words, data processing which could also be done by a human using a pen and paper." (Doc. 20 at 18). Green Shades also argued the pen-and-paper test at the hearing. Accordingly, the Court will proceed to analyze the claimed patents pursuant to the pen-and-paper test.

22 is a method claim that describes the step-by-step process of how the invention is carried out, by using the components described in Claim 1. The pen-and-paper test is generally used to analyze method claims, as it asks whether a claim is directed to a mental process (thinking) that " 'can be performed in the human mind, or by a human using a pen and paper.' " *OpenTV*, 2015 WL 1535328, at *4 (quoting *CyberSource*, 654 F.3d at 1372). Aatrix asserts that Green Shades improperly lumped Claims 1 and 22 together in its Motion to Dismiss and failed to analyze the claims separately, as is generally required when challenging the validity of a patent or claim thereof. This requirement is based on the language of 35 U.S.C. § 282, which states that "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims." *Id.*; *Ortho Pharma. Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992) ("A party challenging the validity of a claim, absent a pretrial agreement or stipulation, must submit evidence supporting a conclusion of invalidity of each claim the challenger seeks to destroy." (citation and internal quotation marks omitted)).

While it is true that Green Shades lumped its analysis of Claims 1 and 22 together, it is not necessarily true that doing so was improper. In *Bancorp*, the Federal Circuit dismissed the plaintiff's argument that system and method claims cannot be abstract ideas. *Bancorp*, 687 F.3d at 1276. Courts should "look not just to the type of claim but also 'to the underlying invention for patent-eligiblity purposes.' " *Id.* (quoting *CyberSource*, 654 F.3d at 1542). In clear terms, it stated that "a machine, system, medium, or the like may in some cases be equivalent to an abstract mental process . . . . [T]he form of the claims should not trump basic issues of patentability." *Id.* at 1277. Indeed, the Supreme Court "has long warned against interpreting § 101 in ways that make patent eligibility depend simply on the draftman's art." *Alice*, 134 S. Ct. at 2360 (citations and internal quotation marks omitted). The *Alice* Court held that the

15

challenged patents' "system claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea." *Id.* Thus, depending on the language and scope of different claims in a patent, it is possible for method and system claims to be indistinguishable from one another. It is worth noting, however, that the system and method claims of the '615 Patent are written differently than the typical software patent claims being challenged in courts.

In *Content Extraction*, the plaintiff argued on appeal that the failure of the defendant and the district court to individually address each claim was erroneous and inconsistent with the statutory requirement. 776 F.3d at 1348. The Federal Circuit found no error; it held that the district court "correctly determined that addressing each claim of the asserted patents was unnecessary." *Id.* The district court had conducted an independent analysis and held that Claim 1 of each patent was representative, "because all of the claims are 'substantially similar and linked to the same abstract idea.' " *Id.* (quoting the district court). In affirming the district court, the Federal Circuit agreed that limiting the analysis to one representative claim of each patent was sufficient because the claims "are substantially similar in that they recite little more than the same abstract concept." *Id.* The circumstances of each patent case are unique; Green Shades' failure to analyze Claims 1 and 22 separately is not necessarily fatal to its Motion to Dismiss, depending on the substance of the claims themselves.

### 1. Claim 1 of the '615 Patent

As noted above, Aatrix argues that Claim 1 is directed to specific components that, when considered as a whole, describe a narrowly-drawn, complete program for designing, creating, and filling out computerized forms. First and foremost, the Court notes that, as a system claim,

16

the system must exist in some physical, tangible form to qualify as subject-matter eligible under § 101. *See, e.g., Digitech*, 758 F.3d at 1348-49. An intangible system claim is ineligible for patent protection.

In *Digitech*, the "device profile" described in the patent was "not a tangible or physical thing." *Id.* at 1349. The Federal Circuit explained that, "[a]s noted in the . . . claims, the device profile is comprised of two sets of data that describe a device dependent transformation," but that the "claims are not directed to any tangible embodiment of this information (*i.e.*, in physical memory or other medium) or claim any tangible part of the digital processing system. The claims are instead directed to information in its non-tangible form." *Id.* The claims were not described as "any . . . embodiment of hardware or software . . . [and] emcompass[ed] all embodiments of the information contained in the device profile, regardless of the process through which this information is obtained or the physical medium in which it is stored." *Id.*

Last year, the Federal Circuit again affirmed a district court's invalidation of system claims in a patent by holding that the claims were intangible and thus did not fall within any of the four categories of eligible subject matter under § 101. *Allvoice Dev. US, LLC v. Microsoft Corp.*, 612 F. App'x 1009, 1017-18 (Fed. Cir. 2015). In *Allvoice*, the Federal Circuit explained that "[s]oftware may be patent eligible, but when a claim is not directed towards a process, the subject matter must exist in tangible form. Here, the disputed claims merely claim software instructions without any hardware limitations." *Id.* at 1018. The plaintiff argued that the claims necessarily imply the existence of a "machine readable, physical state," and should thus qualify as a "manufacture," but the court refused "to import or . . . 'imply' a tangible medium into claims that fail to recite or reference any such medium." *Id.*

17

As recited above, Claim 1 of the '615 Patent describes a "data processing system," comprising (a) a form file with specific characteristics that establishes calculations and rule conditions to fill in the form, (b) a form file creation program that manipulates and digitizes an original form and creates the form file, (c) a data file that contains data exported from a user application, and (d) a form viewer program that operates on the form file and data file to perform calculations, allows the user to review and further modify the data, and creates a viewable form. (Doc. 7-1, col. 19, ll. 59 – col. 20, ll. 9). Claim 1 is not directed to any tangible or physical component, form, or structure. Claim 1 is directed to abstract files, data, and programs in an intangible state, disconnected from the physical world in any way. *Digitech*, 758 F.3d at 1349-50. The system claim does not "claim any tangible part of the digital processing system" through which the files, data, and programs are stored, processed, or viewed. *Id.* The preamble of Claim 1 does not describe a tangible medium, either, such that it could "give life" to the claim. Further, "while [the Court] read[s] claims in view of the specification, of which they are a part, [the Court] do[es] not read limitations from the embodiments in the specification into the claims." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) (citation omitted).

In *Digitech* and *Allvoice*, the Federal Circuit did not undertake to apply the *Mayo* test to these intangible system claims because it was unnecessary to do so, and the Court agrees it is unnecessary in this instance. Pursuant to these cases, Claim 1 of the '615 Patent does not fall within any category of eligible subject matter under 35 U.S.C. § 101.

However, the analysis does not end here. While it is true that the parties' stipulated that the relevant claims of the '615 Patent are independent Claims 1 and 22, the Court has the authority to undertake an independent analysis to discern proper representative claims. As such,

18

the Court cannot ignore the fact that dependent Claim 2 of independent Claim 1 recites a tangible medium. Claim 2 states, "The data processing system of claim 1, further comprising a client computer and a server computer." (Doc. 7-1, col. 20, ll. 10-11). The recitation of "a client computer and a server computer," while vague, claims a tangible, physical medium through which the intangible system components described in Claim 1 are embodied, stored, processed, and viewed. *See Bancorp*, 687 F.3d at 1275. This distinguishes Claim 1 of the '615 Patent from the system claims at issue in *Nuijten*, *Digitech*, and *Allvoice*, wherein the dependent claims of the independent system claims in each of those cases likewise did not recite any tangible embodiment of the claimed system (i.e., physical memory or transmission means) or claim any tangible part of the processing system. *Cf. Allvoice*, 612 F. App'x at 1017-18; *Digitech*, 758 F.3d at 1349-50; *In re Nuijten*, 500 F.3d at 1353.

The Patent Act explains that "[a] claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112(d). This rule must be considered in context with the principle that "each claim of a patent . . . shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." 35 U.S.C. § 282(a); *see Apple Comput., Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 24-25 (Fed. Cir. 2000). Moreover, "the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Hill-Rom*, 755 F.3d at 1374 (citation and internal quotation marks omitted); *Bancorp*, 687 F.3d at 1275 ("[T]he asserted independent method claims do not require implementation on a computer. . . . [T]he doctrine of claim differentiation creates a presumption that the independent claims, unlike

the dependent claims, do not require a computer to be implemented. . . . [T]he dependent method claims are plainly limited to being 'performed by a computer.' ").

In this case, Claim 2 incorporates the intangible (and ineligible) "data processing system" of Claim 1, and adds a limitation—a client computer and a server computer—that gives physical form to the intangible system components of Claim 1. *Cf. In re Nuijten*, 500 F.3d at 1353 ("The text of the claims is not limited by any specified physical medium, nor do the dependent claims add any physical limitations."). The question thus becomes whether Claim 2 is nevertheless directed to an abstract idea.

### 2. Claim 2 of the '615 Patent

When broken down, Claim 2 comprises: (a) a form file with specific characteristics that establishes calculations and rule conditions to fill in the form, (b) a form file creation program that imports and manipulates an original form and creates the form file, (c) a data file that contains data exported from a user application, (d) a form viewer program that operates on the form file and data file to perform calculations and create a viewable form that the user may review and further modify, (e) on a client computer and a server computer.

Claim 2 describes the structural components and functional limitations of said components of a data processing system (i.e., software program) on generic computers. At step one of the *Mayo* test, the Court must determine "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. In the wake of *Alice*, this analysis considers whether "the claims (informed by the specification) . . . describe a problem and solution rooted in computer technology." *Motivation Innovations*, 2016 WL 141621, at *5 (citing *DDR*, 773 F.3d at 1258-59). Upon review, the Court holds that Claim 2 does not describe a problem and solution rooted in computer technology. Rather, the Court agrees with Green

Shades that the claim is directed to a computer-implemented data processing system that describes a data processing system the human mind is equally capable of conceptualizing and performing. In this way, Claim 2 is analogous to the claims in *Content Extraction* in that it is "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory." *Content Extraction*, 776 F.3d at 1347. The Federal Circuit explained that "[t]he concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Id.* This case is further drawn to the abstract idea of performing calculations and manipulating data to produce new data. *See Bancorp*, 687 F.3d at 1279-80. Performing calculations on data is likewise a well-known human function. *See SiRF Tech., Inc. v. Int'l Trade Com'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) (explaining that a machine is not a meaningful limit on the scope of a claim where "the calculations . . . can be performed entirely in the human mind"). As a whole, Claim 2 is directed to the abstract idea of collecting, organizing, and performing calculations on data to fill out forms: a fundamental human activity that can be performed using a pen and paper.

Claim 2 is not saved because it is written as a system claim rather than a process claim. Indeed, this is precisely what the *Alice* Court meant when it cautioned against construing eligibility claims under § 101 simply according to the draftman's art.[4] *Alice*, 134 S. Ct. at 2360.

---

[4]    The patents at issue in *Alice* (and several related Federal Circuit cases) are written differently than the '615 Patent in that they disclosed an abstract method implemented on a generic computer (apparatus), and the recital of a generic computer did not save the method claims from abstraction. *Cf., e.g., Alice*, 134 S. Ct. at 2358-60; *Content Extraction*, 776 F.3d at 1347-48. The *Alice* Court noted that the system claims "recite a handful of generic computer components configured to implement the [abstract] idea, [and] [n]early every computer . . . [is] capable of performing the basic calculation, storage, and transmission functions required by the method claims." *Alice*, 134 S. Ct. at 2360. In this case, the system claim describes data files and programs on a generic computer; it does not only claim the generic computer hardware itself. However, the fact that the system claim recites a tangible medium does not save the data processing system from abstraction.

21

The data processing system disclosed in Claim 2 is comprised of specific structural components, and the structural components are further defined by their functions. These components and functions are not uniquely rooted in computer technology; the human mind can conjure up these components and perform these same basic functions. It does not matter that a computer-implemented program makes a human activity easier or performs the functions faster than a human could. *Bancorp*, 687 F.3d at 1279; *SiFR*, 601 F.3d at 1333. A human could—and indeed, humans still regularly do—obtain a form, mentally establish conditions for filling out the form, collect data and organize it into a file, perform mathematical calculations on the data using the previously-established conditions (either mentally or with the assistance of a pen and paper), and fill in the form's data fields by hand with the newly processed data. Claim 2 is directed to an abstract idea.

At step two of the *Mayo* analysis, the Court "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application" of that idea. *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298). In this case, Aatrix points out that the pen-and-paper test asserted by Green Shades does not fully describe the claim's scope, because it "omits the 'designing' and 'creating' parts of the patent claims, among others." (Doc. 25 at 15). Aatrix argues that "[a] human filling out a tax form by hand would not first take drafting tools and a published governmental form, hand draw an exacting copy of the published form, and then fill out the copy. They would simply fill out the published governmental form." (*Id.*). Aatrix does not state specifically which elements of the claims are directed to designing and creating, but when viewed individually, element (b) of the data processing system of Claim 2 is directed to what may be described as "designing" and "creating" forms. However, element (b) does not

22

describe a structural component that functions to design or create a *new* form; element (b) of Claim 1 describes "a form file creation program that imports a background image from an original form, allows a user to adjust and test-print the background image and compare the alignment of the original form to the background test-print, and creates the form file." (Doc. 7-1, col. 19, ll. 66 – col. 20, ll. 3). Element (b), therefore, describes a structural component of the system that functions to create a replica of an original form that is already in existence, designed and created by some other entity, and then creates a form file.

The form file, claimed in element (a), "models the physical representation of an original paper form and establishes the calculations and rules conditions required to fill in the viewable form." (Doc. 7-1, col. 19, ll. 62 – 65). In other words, the form file contains an electronic replica of an original paper form, and also contains coding that establishes calculations and rules conditions to fill in the form. Individually, element (a) describes nothing "inventive"; an electronic file that depicts an image replica of an original paper image is well-known and conventional in a generic computer, *Content Extraction*, 776 F.3d at 1347, and the calculations and rules conditions can be performed by the human mind.

None of the elements of the claim at issue describe how the original paper form is imported onto the generic computer for use in the data processing system, so the importation encompass any means capable of importing images onto a computer. What is clear, however, is that any means available would encompass "well-understood" and "routine" functions of a generic device or network. For example, the Federal Circuit has explained that "[t]here is no 'inventive concept' in [the plaintiff's] use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in the industry." *Id.* at 1348. In its Response in opposition, Aatrix even concedes that "[a] human could scan the form, print a

copy, and fill that out," and if the human used equipment to first calibrate the scanner to match the aspect ratio, this would "be the equivalent of what the patent claims are directed to." (Doc. 25 at 15 n.10).

Element (c) describes a "data file containing data from a user application for populating the viewable form." This element describes a "well understood" and "routine" component and function of a computer. Lastly, element (d) describes "a form viewer program operating on the form file and data file to perform calculations, allow the user of the of the data processing system to review and change the data, and create viewable forms and reports." As informed by the specification, the viewer program "presents an onscreen representation of the form to the user," and "[f]ields are overlaid on top of this background," some of which are "editable" and some of which are "non-editable." (Doc. 7-1, col. 12, ll. 63 – 67). A program that merge files, performs calculations, and allows a user to manually change data likewise describes generic computer functions. None of the elements individually contain an inventive concept.

Even if the Court were to assume that Claim 2 "describe[s] a problem and solution rooted in computer technology," the data processing system is not "innovative enough to 'override the routine and conventional' use of the computer." *Motivation Innovations*, 2016 WL 141621, at *5 (quoting *DDR*, 773 F.3d at 1258-59). The system describes "files" with generic computer functions, and the system "programs" also disclose generic computer functions. As an ordered combination, the system does not contain an "inventive concept" that overrides the routine and conventional use of a generic computer.

In sum, Aatrix's system claim of the '615 Patent is directed to an abstract idea and constitutes ineligible subject matter under 35 U.S.C. § 101.

### 3. Claim 22 of the '615 Patent

Claim 22 is a method or process claim and describes the invention in terms of how it is done. It is "a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing." *Diehr*, 450 U.S. at 183. As noted above, the Federal Circuit and the Supreme Court have cautioned that courts should look "to the underlying invention," and "a machine, system, medium, or the like may in some cases be equivalent to an abstract mental process . . . . [T]he form of the claims should not trump basic issues of patentability." *Bancorp*, 687 F.3d at 1276-77. Claim 22 comprises the steps of (a) a form designer executing a forms designer program in a generic computer, which allows the form designer to create a form file; (b) executing a data file importing program in a generic computer, the program seamlessly importing data from an end user application program into a data file; and (3) an end user executing a forms viewer program, the program generating a viewable completed form, allowing the user to review and change the data in the form, and generating a final report.[5] (Doc. 7-1, col. 21, ll. 34–51). Some steps are performed by a user (i.e., a human), and some steps are performed by the system (i.e., software application program).

The method of Claim 22 is, in substance, no different than the system of Claim 2. The system claim is directed to an abstract idea, and the method claim simply directs a user of the abstract system to "execute" different parts of the abstract system on a digital computer. *Cf., e.g., Alice*, 134 S. Ct. at 2358-59; *Content Extraction*, 776 F.3d at 1347-48. The asserted method and system claims are "equivalent," and "[t]he only difference between the claims is the form in

---

[5]      A method claim protects a method and is not to be interpreted as directed to a system or apparatus, such as a computer, even if the system performs the claimed method. *Bandag Inc. v. Al Bolser's Tire Stores Inc.*, 750 F.2d 903, 922 (Fed. Cir. 1984). A claim cannot be directed to both a method and an apparatus. *Id.* The fact that Claim 22 recites a "digital computer" does not save Claim 1 from being an intangible system claim.

which they were drafted." *Bancorp*, 687 F.3d at 1277; *see also Content Extraction*, 776 F.3d at 1348 ("[T]he claims of the asserted patents are substantially similar in that they recite little more than the same abstract idea.")

The method claim does not add anything to the patent that is not already contained within the abstract system claim. Claim 22 of the '615 Patent is directed to an ineligible process under 35 U.S.C. § 101.

### C. The '393 Patent

At the hearing, Aatrix stated that it believes Green Shades is infringing Claim 13 (apparatus) and Claim 17 (apparatus) of the '393 Patent. It did not assert infringement of Claim 1 (method). However, the Court determines that Claim 1, as the only independent method claim of the '393 Patent, must be considered as a representative claim.

Claim 13 of the '393 Patent is an apparatus claim. It claims:

13. A data processing system, on a digital computer having a memory and a processor for executing a program, for designing, creating, and importing data into a form viewable by a user, comprising:
    (a) a form designer program capable of executing in the memory and directing the processor to create a form file, the form file comprising a model of the form and establishing calculations and rule conditions required to fill in the form, and a data field for receiving data;
    (b) a data file comprising data exported from an end user application program; and
    (c) a viewer program capable of executing in the memory and directing the processor to import the exported data to populate the data field in the form file with the imported data, to allow the user of the data processing system to review and change the imported data, to perform the calculations on the imported data in the data field, and to generate the viewable form.

(Doc. 7-2, col. 20, ll. 19–36).

Claim 1 of the '393 Patent is a method claim. It claims:

1. A method, on a digital computer having a memory and a processor for executing a program, for designing, creating, and importing data into a form viewable by a user of a data processing system, comprising the steps of:

26

(a) executing the program to convert a paper form into a form file, the form file comprising a model of the paper form, establishing calculations and rule conditions required to fill in the form, and comprising a data field for receiving data;

(b) importing data exported from an end user application into a data file and populating the data field in the form file with the imported data;

(c) performing the calculations on the imported data in the data field;

(d) allowing the user on the digital computer to review and change the imported data; and

(e) outputting the viewable form.

(Doc. 7-2, col. 19, ll. 34–50).

Claim 17 of the '393 Patent is an apparatus claim. It claims:

17. A computer-readable memory comprising an application program executable by a computer having a central processing unit, the computer readable memory configured to:

(a) allow a form designer to create a form file comprising a model of a form, establishing calculations and rule conditions required to fill in the form;

(b) import data exported from an end user application program into a data file and populate a data field in the form file with the imported data;

(c) allow a user of the application program to review and change the imported data; and

(d) perform the calculations on the imported data in the data field and to generate the form.

(Doc. 7-2, col. 20, ll. 49–61).

The parties' arguments for and against eligibility of the '393 Patent are the same as the arguments raised in relation to the '615 Patent. The underlying legal principles are the same, as well, and do not require repetition. The Court shall proceed to analyze the independent claims of the '393 Patent.

**1.  Claim 13 of the '393 Patent**

Claim 13 of the '393 Patent and Claim 1 of the '615 are similar in many respects, but they differ in a fundamental way.  Whereas Claim 1 is directed to an intangible system disconnected from any tangible medium, rendering it ineligible subject matter under § 101, the "data processing system" of Claim 13 is "directed to [a] tangible embodiment of this information

27

(*i.e.*, in physical memory)" and claims a "tangible part of the digital processing system." *Digitech*, 758 F.3d at 1349.  Claim 13 recites a "digital computer having a memory and a processor" in the preamble, and in the claim itself, it recites "a form designer program capable of executing in the memory and directing the processor to create a form file . . . ." and "a viewer program capable of executing in the memory and directing the processor to import the exported data . . . ." (Doc. 7-2, col. 20, ll. 19-36).  The inclusion of a memory and processor in Claim 13 of the '393 Patent fixes the defect in Claim 1 of the '615 Patent.  *See Allvoice*, 612 F. App'x at 1017-18; *Digitech*, 758 F.3d at 1349-50.  Even if Claim 13 had only recited the tangible medium in the preamble, this likely would have been sufficient, as the preamble of a claim is a substantive limitation on the scope of the claimed invention where it "recites essential structures or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *In re Cruciferous Sprout Litig.*, 301 F.3d at 1347 (citation omitted).

However, this is where the material differences end.  The language of Claim 13—the system components and functions of said components—is not materially different from the language employed by Claim 1 of the '615 Patent.  The components have been reorganized within the claim and their described functions have been tailored, but the main components and functions of the data processing system remain the same.  For example, Claim 13 now describes "*a form designer program* [capable of executing in the memory and directing the processor] *to create a form file.*"  (Doc. 7-2, col. 20, ll. 23–24).  Claim 1 describes "*a form file creation program* [that imports a background image from an original form . . .] *and creates the form file.*" (Doc. 7-1, col. 19, ll. 66 – col. 20, ll. 3).  The functional language in Claim 1 has been removed and replaced by tangible system language in Claim 13, but the component itself is the same.  As another example, the language "and a data field for receiving data" has been added to the

description of the "form file" in Claim 13, where this language is lacking in Claim 1. Lastly, Claim 13 now describes "a viewer program capable of executing in the memory and directing the processor to import the exported data to populate the data field in the form file with the imported data." (Doc. 7-2, col. 20, ll. 30–33). By contrast, Claim 1 describes "a form viewer program operating on the form file and the data file." (Doc. 7-1, col. 20, ll. 6–7).

None of the changes made to Claim 13 materially change the analysis the Court performed in relation to Claim 2 of the '615 Patent at either *Mayo* step one or step two.[6] The data processing system disclosed in Claim 13 of the '393 is an abstract idea and thus ineligible subject matter under 35 U.S.C. § 101.

### 2. Claim 1 of the '393 Patent

The method disclosed in Claim 1 of the '393 Patent largely tracks the data processing system disclosed in Claim 13. Claim 13 discloses the system components and their functions, and Claim 1 discloses the steps taken by way of those same components. The steps of Claim 1 of the '393 Patent are broken down differently than the steps of Claim 22 of the '615 Patent, but they are substantively analogous. Some steps are performed by a user (i.e., a human), and some steps are performed by the system (i.e., software application program). In this way, the above analysis of Claim 22 of the '615 Patent applies with equal force to Claim 1 of the '393 Patent.

The method of Claim 1 is, in substance, no different than the system of Claim 13. The system claim is directed to an abstract idea; the method claim directs the user to "execute" the abstract idea on a digital computer. *Cf., e.g., Alice*, 134 S. Ct. at 2358-59; *Content Extraction*, 776 F.3d at 1347-48. The steps recited in Claim 1 are all conventional and routine computer functions, such as "importing data into a data file," "populating the data field into the form,"

---

[6]     As a reminder, Claim 2 of the '615 Patent incorporates the language of both Claim 1 and Claim 2. 35 U.S.C. § 112(d); *Bancorp*, 687 F.3d at 1275.

"performing the calculations on the imported data, and "outputting the viewable form." In *Alice*, the Supreme Court explained that "[t]he function performed by the computer at each step of the process is purely conventional," which is insufficient for patent eligibility. *Id.* at 2359 (citation omitted). The asserted method and system claims are "equivalent," and "[t]he only difference between the claims is the form in which they were drafted." *Bancorp*, 687 F.3d at 1277.

The method claim does not add anything to the patent that is not already contained within the abstract system claim. Claim 1 of the '393 Patent is directed to an ineligible process under 35 U.S.C. § 101.

### 3.  Claim 17 of the '393 Patent

Claim 17 of the '393 Patent does not have a comparable counterpart in the '615 Patent. The preamble describes "[a] computer-readable memory comprising an application program executable by a computer having a central processing unit" configured to carry out several steps recited in Claim 1, the independent method claim. (Doc. 7-2, col. 20, ll. 49–61). The Supreme Court and Federal Circuit have held computer-readable memory/medium claims to be abstract and ineligible in various cases when they are substantively equivalent to the method claim. *See, e.g., Alice*, 134 S. Ct. at 2360; *Bancorp*, 687 F.3d at 1276 ("[A] claim directed to a 'computer readable medium,' despite its format, should be treated no differently from the comparable process claims to be held patent ineligible under § 101."); *id.* at 1277 ("[T]he asserted system and medium claims [are] no different from the asserted method claims . . . . There is no material difference between these two categories of claims in the asserted patents."). Accordingly, Claim 17 is directed to ineligible subject matter under 35 U.S.C. § 101.

30

## IV. CONCLUSION

For the foregoing reasons, the Court holds the '615 and '393 Patents to be drawn to ineligible subject matter under 35 U.S.C. § 101. As subject-matter eligibility under § 101 is a question of law and there are no other pending allegations, the present action is due to be dismissed with prejudice.

Accordingly, it is hereby **ORDERED**:

1. Defendant's "Dispositive Motion to Dismiss Amended Complaint Under 35 U.S.C. § 101" (Doc. 20, filed July 15, 2015) is **GRANTED**;

2. This case is **DISMISSED with prejudice**; and

3. The Clerk is directed to **TERMINATE** any pending motions and to **CLOSE** this case.

**DONE AND ENTERED** at Jacksonville, Florida, this _30_ day of March, 2016.

HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

Copies to:
Joanne M. O'Connor, Esq.
John B. Lunseth, Esq.
Ethan Andrew Way, Esq.
Harold Timothy Gillis, Esq.
Nancy A. Johnson, Esq.

31