UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Aatrix Software, Inc.,

      Plaintiff,

v.                                                                  Case No. 3:15-cv-00164-HES-MCR

Green Shades Software, Inc.,

      Defendant.

_____/

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS
(DOC. 144) AND MEMORANDUM OF LAW IN SUPPORT**

      Defendant Green Shades Software, Inc. ("Defendant"), pursuant to Fed. R. Civ. P. 37 and M.D. Fla. L.R. 3.01, responds to oppose Plaintiff Aatrix Software, Inc.'s ("Plaintiff") Motion to Compel Production of Documents ("Motion to Compel") (Doc. 144), and requests that this Court deny it as untimely, unfounded, and baseless.  Further, Defendant states:

**I.       INTRODUCTION**

      This Court's Scheduling Order is clear:  "All requests and motions pertaining to discovery . . . disputes which require Court intervention shall be made by proper motion immediately." (Doc. 99, at 1).  The Court admonishes parties not to wait until the last minute to file motions to compel.  This Motion to Compel was made at the thirteenth hour – 11:05 p.m. EDT on May 20, 2019, within the final hour of fact discovery before the midnight cut-off date that had been looming upon the parties and their counsel for months.  The Motion to Compel is untimely:  Plaintiff has known about the information it seeks for years, or at least by April 23-24, 2019, and waited too late to raise these issues with the Court.

To shine the spotlight away from its own dilatoriness, Plaintiff spins a false narrative, conjuring a discovery dispute out of thin air.  Both parties produced documents on a rolling basis, Plaintiff producing thousands of documents before Defendant's 2019 production Plaintiff now complains about, Plaintiff producing more documents days before depositions of Plaintiff's witnesses. Both parties shifted their deposition schedules to accommodate the other, and neither side complained.  Plaintiff took Defendant's depositions over multiple days, <u>closed</u> the depositions, and did not raise any discovery issues then or in the weeks after. Plaintiff's newly-minted story inferring it was forced to depose Defendant on short notice due to Defendant's production "deficiency" when Plaintiff never complained about any such thing is an attempt to manufacture an excuse for failure to timely bring the Motion to Compel.  When Plaintiff's rambling narrative is stripped of its smoke and mirrors, the Motion to Compel is seen for what it is:  an untimely attempt to obtain what was never requested in discovery despite the opportunity to do so.

Substantively, there are myriad reasons why the Motion to Compel should be denied. <u>First</u>, "financial data" requested from Defendant's CRM system has already been produced. If Plaintiff is seeking to root around in Defendant's CRM system, the discovery rules do not allow it.  <u>Second</u>, Plaintiff seeks discovery on Defendant's YEF (Year End Forms) product, but this case has only ever been about the TFC and PTS products.  Plaintiff has known about the YEF product for years and requested no information.  <u>Third</u>, Plaintiff's request to review "source code" recently re-written in Javascript is frivolous.  *See infra*, enough said.  <u>Fourth</u>, regarding recent investment activity in Defendant by an outside third party (SFW Capital Partners), Plaintiff admits it has never requested it and has no basis to get it.

## II.     RELEVANT BACKGROUND

### A.      Plaintiff's 2014 Correspondence to Defendant and Complaints.

From the beginning of the dispute that resulted in this patent infringement lawsuit, Plaintiff has been precise and specific about which of Defendant's products it claims infringe its '615 and/or '393 Patents:   Defendant's TFC and PTS product and only those.

On September 25, 2014, Plaintiff's counsel sent Defendant a letter as a precursor to this 2015 lawsuit.   In it, Plaintiff's counsel indicated Plaintiff had conducted a detailed review of Defendant's "products/services" to determine if they infringed Plaintiff's patent(s) and focused on two products:  (i) one responsible for "various payroll accounting functions, including the preparation and filing of payroll tax forms" (*i.e*., PTS); and (ii) "an installed software called the Tax Filing Center ("TFC").  Plaintiff's counsel described how a copy of the TFC product was purchased on the open market, installed, and examined at length.

In Plaintiff's Complaint filed on February 13, 2015, Plaintiff alleged:

> The Green Shades products that infringe the '615 Patent are the TFC and the PTS, which are made, used, offered for sale, and sold by Green Shades, or made available by Green Shades for licensed use over the Internet.

(Doc. 1, ¶ 12).

Later, in Plaintiff's Second Amended Complaint, filed on April 26, 2016, after Plaintiff's review of paper discovery produced by Defendant and Plaintiff's experts' detailed review of the "source code" for both the TFC and PTS products at length; Plaintiff alleged:

> Defendant Green Shades makes, uses, sells, and offers to sell two different software product packages and operates the products and components of the products on computers and data processing systems in infringement of the ['615] patent, as previously alleged herein.  They are called the TFC and the PTS.

***

3

> Defendant Green Shades makes, uses, sells, and offers to sell two different software product packages and operates the products and components of the products on computers and data processing systems in infringement of the ['393] patent, as previously alleged herein.  They are called the TFC and the PTS.

(Doc. 62, ¶¶ 120, 141).

### B.      Plaintiff's Paper Discovery Dating Back to 2015.

Beginning many years ago, the parties propounded paper discovery upon each other. To date, Plaintiffs has served discovery upon Defendant, and Defendant has served two sets of interrogatories and two sets of document requests upon Plaintiff.[1]  This Motion to Compel only concerns certain requests set forth in Plaintiff's first set of requests for production to Defendant, but information set forth in a supplemental response to one of Plaintiff's first set of interrogatories is highly relevant to demonstrate how long Plaintiff has known in fact about Defendant's YEF product for which it now untimely requests "source code."

On September 3, 2015, Plaintiff served its First Set of Interrogatories.  Defendant served Responses and Objections to them on October 30, 2015 and Supplemental Responses on January 15, 2016.  While Plaintiff's First Set of Interrogatories are not technically the subject of the Motion to Compel, Defendant's Supplemental Response to Interrogatory Number 2 has been in Plaintiff's possession since January 2016 and provides information about several of its products, including the YEF (Year End Forms) product:

> YEF W-2, T4, and 1099 Editor (Forms Lite) – . . .[A] Microsoft Windows application created to allow the editing of W-2 and 1099 forms information

---

[1] Far from the one-sided "hard fought" discovery "battle" falsely described in the Motion to Compel and its rambling and misleading context, in fact, Defendant has two motions to compel against Plaintiff, one for non-source code documents not produced, and another for production of relevant "source code" for Plaintiff's other products prior to 2002 which, if Defendant's theory proves true, will conclude this case (once again with prejudice) on the merits in favor of Defendant.  These motions are pending and timely.  (Doc. 140; Doc. 142).

for e-filing to tax agencies, as well as paper distribution to recipients, such as employees or vendors. Th[e] . . . same underlying core code . . . used in the TFC941 and 940 Editor (Legacy) with a tree node on the left and a visual representation of the physical form on the right. It did allow the user to print the forms (using Adobe PDF functionality) for distribution to recipients, such as employers or vendors, not tax agencies. It would also create the e-file for submission to tax agencies. This editor was available from 2004 to 2006.

YEF W-2, T4, and 1099 Editors – This is an HTML web application that executes on a web server that allows the user to edit HTML fields for the underlying data for the respective W-2 or 1099 data. The editors are different HML web pages for form that are recreated to be similar in visual representation to their paper forms, but would be altered to allow for certain functionality. For example, the background image on the HTML would be an image taken from portions of a W-2 form for section of the form, but not for other sections. The editors exist so that end users can edit their data that can be e-filed or printed (using PDF functionality) for distribution to recipients, such as employees or vendors, not to tax agencies. These editors are available from 2006 until present.

Defendant's Supplemental Response to Interrogatory No. 2, (f)-(g).

Also on September 3, 2015, Plaintiff propounded its First Set of Requests for Production of Documents ("First RFPs") upon Defendant, setting forth 45 separate documents requests. On November 6, 2015, Defendant served Objections and Responses to Plaintiff's First Set of Requests for Production, objecting to certain requests outright, agreeing to produce documents in respect to others, and objecting to other requests but agreeing to produce certain documents subject to the stated objections and without waiver of them. Defendant's objections were served before certain changes to Fed. R. Civ. P. 26(b)(1), notably language adopting a "proportional to the needs of the case" standard, took effect on December 1, 2015 (meaning Defendant's objections to relevancy, failure to be reasonably calculated to lead to the discovery of admissible evidence, vagueness, *et cetera*, are intact given that the language of the Rule had not yet taken effect) .

Plaintiff admits that its Motion to Compel rests upon only six[2] Requests set forth in

its First RFPs:  Request Nos. 22, 24, 25, 26, 8, and 20.  The first four provide:

> **Request No. 22:**  All documents that relate to any offer for sale or sales-related proposal for any version of any Product-at-Issue during the relevant time period, including without limitation competitive bids, requests for proposal, or requests for information to any potential or actual customer, and including documents showing identity of such customers and the details of the offer or proposal.
>
> **Request No. 24:**  Documents reflecting actual sales units, revenues and average selling price of each Product-at-Issue by customer for each year during the relevant time period.
>
> **Request No. 25:**  Documents reflecting actual sales units, revenue and average selling price of each Product-at-Issue by geographic territory during the relevant time period.
>
> **Request No. 26:**  Documents reflecting actual sales units, revenue and average selling price and related costs for products and services sold in conjunction with Product-at-Issue during the relevant time period.

Plaintiff's First RFPs, Nos. 22, 24-26.

On October 3, 2015, Defendant objected to Request Nos. 22, 24, 25, and 26, and on

January 20, 2016, Plaintiff moved to compel ("2016 Motion to Compel") on Defendant's

objections to those four Requests.  (Doc. 49).   More than two years later, the Court ruled on

Plaintiff's 2016 Motion to Compel and overruled Defendant's objections to Request No. 22,

24, 25, and 26, as discussed, *infra.*

---

[2] On pages 4, 8, and 18 of the Motion to Compel, Plaintiff purports to rely on Request No. 40 of the First RFPs, but:  (i) never quotes Request No. 40 in violation of this Court's Local Rules, *see* M.D. Fla. L.R. 3.04(a)(motion to compel discovery shall include quotation in full of each request for production); (ii) never mentions how Request No. 40 relates to the Motion to Compel.  *See generally*, Motion to Compel, & at 4, 8, 18.  Request No. 40 sought "comparisons" between Defendant's products and Plaintiff's '615 or '393 Patents, and even Plaintiff would have to acknowledge that discovery has established there were no such documents because Defendant had no idea who Plaintiff was much less that it had any purported patented inventions.  References to Request No. 40 should be disregarded by the Court in considering the Motion to Compel and this Response.

The remaining two Request Nos. 8 and 20 Plaintiff relies upon in the Motion to Compel and Defendant's corresponding responses and objections (never challenged until 11:05 p.m. on May 20, 2019, 55 minutes before the fact discovery cutoff) provide:

> **Request No. 8:**  Documents regarding demand for each Product-at-Issue and feature thereof, factors considered by customers in connection with the purchase of any Products-at-Issue, or advantages, benefits, weaknesses and limitations of each Product-at-Issue.

> **Response and Objections:**  Green Shades objects to this Request as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, vague and ambiguous as to the terms advantages, benefits, weaknesses and limitations" and insofar as it seeks information subject to the attorney-client privilege and/or the work product doctrine. Green Shades also objects to this Request as worded because it cannot and does not know what factors each and every customer may have considered when purchasing its product.  Subject to and without waiver of these objections, and subject to prior agreement of counsel, collection and production of non-privileged responsive documents will be made at a mutually agreeable place and time.  Green Shades reserves the right to supplement this response in accordance with applicable rules.

> **Response No. 20:**  All source code for each version of each Product-at-Issue for the relevant period, including all source code for all associated software or files necessary to allow each Product-at-Issue to function as intended.

> **Response and Objection:**  Green Shades objects to this Request as overly broad in its request for source code for all associated software or files. Subject to prior agreement of counsel, collection and production of responsive documents will be made at a mutually agreeable place and time.  Green Shades reserves the right to supplement this response in accordance with applicable rules.

Plaintiff's First RFP's 8, 20 & Defendant's Corresponding Response and Objections.[3]

---

[3] Plaintiff's First RFPs and Defendant's Responses and Objections are attached as exhibits to Plaintiff's 2016 Motion to Compel.  (Doc. 49); *see infra*.

### C.     Defendant's First Discovery Responses and the Two Year Case Hiatus.

Plaintiff's Motion to Compel is disingenuous from the outset and attempts to paint a false narrative and portray Defendant (and counsel) in a bad light as to Defendant's discovery compliance. Motion to Compel, at 1, 7, 14, 18. Clearly, Plaintiff has employed a strategy of complaining about a document production dispute that did not happen, to then shift focus to the unsupported mantra that "Plaintiff needs these documents and does not have them," regardless of whether Plaintiff requested or is entitled to them. Plaintiff's false statement it did not receive Defendant's discovery until "after telephone conferences, deficiency letters, and the passage of more than eight months" is blatantly false. *Id.*

In any case, what really happened: On February 5, 2016, Defendant, through counsel produced more than 145,000 documents responsive to Plaintiff's requests. On October 30, 2015, November 6, 2015, and January 15, 2016, Defendant timely responded to Plaintiff's multiple rounds of paper discovery and even supplemented certain responses with further detail. On August 22, 2018 and August 27, 2018, Plaintiff produced 205,281 pages in discovery, then another 18,551 documents on March 28, 2019, and 88,052 documents on April 1, 2019. All in, Defendant has produced more than more than 500,000 pages of documents to Plaintiff in response to Plaintiff's First RFP and others. Further, Plaintiff's experts were permitted to travel to Jacksonville, Florida and review Defendant's PTS and TFC "source code" (the only "source code" Plaintiff ever requested to review) at length and for weeks. To charge, as Plaintiff and its lead counsel do now, that Defendant has not fully and fairly complied with its discovery obligations is disingenuous and false.

In January 2016, counsel for Plaintiff and Defendant disagreed with respect to Plaintiff's entitlement to documents sought by four of Plaintiff's 45 Requests set forth in Plaintiff's First RFP, namely Request Nos. 22, 24, 25, and 26.  Plaintiff filed the 2016 Motion to Compel addressing only those 4 Requests.  (Doc. 49).  On February 8, 2016, Defendant responded in opposition to the 2016 Motion to Compel.  (Doc. 54).

On March 30, 2016, this case came to a screeching halt when this Court entered its Order granting Defendant's Dispositive Motion to Dismiss Amended Complaint Under 35 U.S.C. § 101 and Judgment for Defendant.  (Doc. 59; Doc. 20).  In the Order, the Court:  (i) held that Plaintiff's "'615 and '393 Patents to be drawn to ineligible subject matter under 35 U.S.C. § 101; (ii) held that subject matter ineligibility under § 101 is a question of law and there were no other allegations; and (iii) dismissed the case with prejudice.  (Doc. 59, at 31).

Other than Plaintiff's April 26, 2016 filing of a "Second Amended Complaint" without leave of Court to do so (Doc. 62), this case stood as dismissed with prejudice for more than two years while the parties litigated the case on appeal to the Federal Circuit Court of Appeals.  On or about June 29, 2018, this Court reactivated the case by entering an Order noting that the Federal Circuit had vacated the dismissal of Plaintiff's Amended Complaint and deemed Plaintiff's Second Amended Complaint filed.  (Doc. 86).

### D.    The Magistrate Judge's Order on Plaintiff's 2016 Motion to Compel.

After the Court entered its Order reactivating the case and establishing amended pleading and response deadlines, the Magistrate Judge turned to Plaintiff's 2016 Motion to Compel, which had been filed and fully briefed before the Court dismissed the case with prejudice in March 2016.  On August 2, 2018, the Magistrate Judge:  (i) found that the

discovery sought by Plaintiff in Request Nos. 22, 24, 25, and 26 of the First RFPs may be relevant to Plaintiff's damages claims in establishing a reasonable royalty rate; (ii) overruled Defendant's objections to Request Nos. 22, 24, 25, and 26 as a result; (iii) noted that Defendant's confidentiality and business sensitivity concerns were legitimate and Defendant's opposition to the 2016 Motion to Compel "substantially justifiable; (iv) determined that the "Attorney's Eyes Only" protections of the Joint Protective Order in place would accommodate confidentiality concerns; and (v) ordered Defendant to produce responsive documents within 20 days.  (Doc. 96).

As stated, *supra*, within the time frame set forth by the Magistrate Judge and in full compliance with the Order (Doc. 96), Defendant produced thousands of pages of documents responsive to Request Nos. 22, 24, 25, and 26 in addition to the hundreds of thousands of page of documents Defendant had already produced in discovery.

### E.     Spring and Summer 2019 Resumed Discovery.

Following the *Markman* hearing before the Court on February 27, 2019 regarding complex claims construction issues, counsel for the parties turned back to fact discovery matters in contemplation of the May 20, 2019 discovery cutoff established by the Court. Both parties produced additional documents to the other.

On April 2, 2019, after Plaintiff's counsel received certain of Defendant's supplemental documents, and then noticed Defendant's depositions, including a 71-topic Fed. R Civ. P. 30(b)(6) notice and notices for seven other corporate employees of Defendant, including Defendant's Co-CEOs.  The depositions were originally scheduled for the weeks of April 15 and 22.  Due to a production mistake by Defendant's eservices vendor, Defendant's

productions included privileged documents, Plaintiff's counsel called the issue to Defendant's counsel's attention, a "clawback" was instituted, and the privileged documents that should not have been included were removed, and the error was fixed. Plaintiff's counsel, however, requested that Defendant re-scheduled the depositions for later dates to provide more time for preparation and document review, and Defendant's counsel readily agreed to shift the schedule. There was no more to the issue than that, and Plaintiff's counsel did not complain about anything at the time.

The new schedule for Defendant's depositions was set and Plaintiff deposed Defendant's corporate representatives and multiple fact witnesses[4] on April 22, 23, 24, 25, 26, and 29, 2019 in Jacksonville, Florida. Plaintiff's counsel cancelled the last deposition of a former Defendant employee to be held on April 30 because he decided he did not need it. Importantly, Plaintiff's counsel closed every deposition, never raised any discovery issues or deficiencies during any of the depositions, and had full and fair opportunity to do so.

As Plaintiff's counsel had, Defendant's counsel also requested a shift in the previously agreed-upon schedule for Plaintiff's 30(b)(6) corporate representative and other witnesses depositions so that Plaintiff could have time to "re-harvest" "source code" for certain of its products it had agreed to provide to Defendant (but later reneged). Counsel for the parties agreed to a new schedule as they had with Defendant's witnesses, and Defendant deposed Plaintiff's corporate representatives and multiple fact witnesses on May 7, 2019 in

---

[4] Importantly, none of the noticed depositions of Defendant's corporate representative or fact witnessed required the production of documents, as they were not noticed *duces tecum* and Plaintiff's 30(b)(6) notice did not request documents nor could it have because it was not propounded 30 days or more prior to the deposition date. See Fed. R. Civ. P. 30(b)(6).

Jacksonville Florida, and May 9, 10, 14, 15, 16, and 20 in Grand Forks, North Dakota, where Plaintiff maintains its principal office and headquarters.

**F.**     **Plaintiff's Untimely Local Rule 3.01(g) Contact and Motion to Compel.**

As stated, *supra*, Plaintiff's counsel started and finished Defendant's depositions between April 22 and April 29, 2019.   Plaintiff deposed Defendant's sole corporate representative and co-CEO on April 23-24, 2019 and the other co-CEO on April 26, 2019.

Weeks later, at 8:24 p.m. on Sunday night, May 12, 2019, with full knowledge that Defendant's counsel were getting on planes to travel to Grand Forks, North Dakota for a full second week of depositions of Plaintiff's corporate representatives and witnesses, Plaintiff's counsel sent an email attaching a May 12, 2019 letter purporting to raise the discovery issues that are the subject of the Motion to Compel for the very first time.  Nowhere in the text of the letter does Plaintiff identify what it now claims as the basis for the Motion to Compel – that the sought information is responsive to Request Nos. 22, 24, 25, 26, 8, or 20.

Plaintiff's counsel's cover email requested LR 3.01(g) conference while Defendant's counsel was taking the remaining depositions of Plaintiff's multiple remaining witnesses. Notwithstanding being in the middle of taking back-to-back depositions, Defendant's counsel held a LR 3.01(g) conference call with Plaintiff's counsel immediately after the conclusion of the last deposition of Plaintiff's witnesses on Monday, March 20, 2019 at 2:30 p.m. EDT.; similar to the earlier letter, there was no discussion of Request Nos. 22, 24, 25, 26, 8, or 20 as the purported basis for production, only that Plaintiff wanted the information.  The Motion to Compel followed later that evening at 11:05 p.m. on May 20, 2019.

### III.     ARGUMENT

#### A.     Plaintiff's Motion to Compel is Untimely and Violates the Local Rules.

As stated, *supra*, this Court warns that parties not to wait until the last minute to bring

discovery disputes before it:

> All requests and motions pertaining to discovery shall be filed so that the
> discovery will be due <u>prior</u> to the completion date and any disputes which
> require Court intervention shall be made by proper motion immediately.

(Doc. 99, at 1).  Indeed, federal district courts within the Middle District of Florida uniformly

hold that unexplained delays in waiting to bring a motion to compel after a discovery dispute

has surfaced render such a motion untimely.   *Goers v. L.A. Entertainment Group*, 2017

WL2578649, \*3 (M.D. Fla. June 14, 2017; *see also Brown v. Jacobs Engineering, Inc.*, 401

Fed. Appx. 478 (11th Cir. 2010) (affirming district court's denial of motion to compel where

movant waited until discovery deadline to move to compel despite discovering grounds to

compel five days before discovery cutoff).  Moreover, there is no tolling period recognized

by parties' informal attempts to resolve a dispute; rather, the measure is from the time the

discovery dispute comes to light and the filing of the motion to compel.  *Safari Ltd. V.

Adonix Transcomm, Inc.*, 2011 WL 465334, \*2 (S.D. Fla. Feb. 4, 2011).

Here, the Court's own Scheduling Order requires a motion to compel be filed

<u>immediately</u> upon a party learning of a discovery dispute.  (Doc. 99, at 1).  By Plaintiff's

own admission, Plaintiff's counsel learned of the CRM database at least during the

deposition of Defendant's corporate representative and Co-CEO, Matthew Kane, on April 24,

2019.  Plaintiff brought the Motion to Compel close to midnight on May 20, 2019, the last

day of fact discovery.  Motion to Compel, at 7; Ex. E.  <u>Twenty-six days intervened between</u>

13

the deposition testimony and the filing date of the Motion to Compel.  Plaintiff's request is untimely under the Scheduling Order and Middle District of Florida case law construing similar situations.[5]  The timing is worse for Plaintiff on the YEF product – Defendant disclosed the YEF product and its functionality in Interrogatory Responses delivered to Plaintiff on or about January 15, 2016, more than three years ago.  Even by Plaintiff's own account, Plaintiff's counsel learned about the YEF product during the depositions of Mr. Kane on April 23 and April 24, 2019 and Defendant's other Co-CEO, David Rojas, on April 26, 2019.  Motion to Compel, at 15.  More than three full weeks passed between these depositions and the filing date of the Motion to Compel.  The same goes for Plaintiff's request for information about SFW Capital Partners.  Motion to Compel, Ex. G (Plaintiff learned from Mr. Kane about SFW Capital Partners in April 23, 2019 deposition testimony, twenty-seven days before the filing of the last-minute Motion to Compel).[6]

In addition to being untimely, Plaintiff's late Sunday night May 12, 2019 letter purporting to constitute a "good faith" conference pursuant to Local Rule 3.01(g) and subsequent conference call on May 20, 2019, the last day of fact discovery, failed to satisfy the "good faith" effort required by the Rule.  Plaintiff's counsel never referred either in the letter or the call to what it now contends support its Motion to Compel – Request Nos. 22,

---

[5] As pointed out by the *Safari* court, *supra*, the measuring stick is between when the discovery dispute comes to light and the filing of the motion to compel, and informal efforts, even if required by local rule (here, Local Rule 3.01(g)), do not toll the timeline in considering the timeliness of the motion to compel when filed.

[6] Lastly, Defendant need not address the new Javascript source code issue because Defendant's counsel already agreed to produce it and it should note be a subject of the Motion to Compel.  *See* discussion, *infra,* III.E.

24, 25, 26, 8, and 20, which were not mentioned in either communication.[7]  This is a blatant failure to comply with the calling and purpose of Local Rule 3.01(g) and its good faith conferral requirements prior to filing a motion to compel.  *See* M.D. Fla. Local Rule 3.01(g).

### B.   Defendant Has Fully Complied with Producing Documents Responsive to Request Nos. 22, 24, 25, and 26 of Plaintiff's First RFPs.

As stated, *supra*, the Magistrate Judge ordered Defendant to produce documents responsive to Request Nos. 22, 24, 25, and 26 within 20 days from August 2, 2018.  (Doc. 96).  Defendant complied, and produced at least 82,000 responsive documents.

But, simply because Plaintiff learned that Defendant has an internal system it calls its CRM system during the deposition of Mr. Kane on April 23 and 24, 2019, Plaintiff accuses Defendant of not producing responsive documents.  There is no basis for this claim.

First, Plaintiff falsely claims that during Mr. Kane's deposition, Plaintiff's counsel "requested additional documents and information" and "Defendant's counsel did not object." Motion to Compel, at 6.  Plaintiff points to Exhibit E to the Motion to Compel, where Plaintiff's counsel questions Mr. Kane about the CRM system, but nowhere does he ever ask Mr. Kane or Defendant's counsel for "additional documents and information" and neither Mr. Kane nor Defendant's counsel ever agreed to do so.  *See* Motion to Compel, Ex. E.[8]

---

[7] Plaintiff further misrepresents the interaction between counsel in this regard by asserting that "Defendant has not responded to Plaintiff's [May 12, 2019] letter."  Motion to Compel 4.  This is demonstrably false. Defendant had multiple *in person* conversations during the week of May 13 through 17, 2019, culminating in the scheduled good faith conference call on May 20, 2019, that further culminated in a written email between Plaintiff's and Defendant's counsel summarizing the call and setting out each side's respective positions.  *See* Ex. A,  Email between John Lunseth, Esq. and Joseph Bain, Esq. dated May 2019.

[8]  Plaintiff further grossly overreaches by stating "Defendant should be ordered to produce all CRM data and Discounting Manuals."  Motion to Compel, at 9.  Plaintiff knows full well from deposing Mr. Kane that the CRM system includes much more business information and data that is responsive to Request Nos. 22, 24, 25, and 26.  And, worse, Plaintiff does not even explain what "Discounting Manuals" are and how they are responsive to any document request or germane to any issue in this case.

Second, Plaintiff's Motion to Compel simply launches into a rehash of its argument in the 2016 Motion to Compel to support its claim to information requested by Request Nos. 22, 24, 25, and 26 of the First RFPs. This is old news: the Magistrate Judge already overruled Defendant's objections, but, more to the point, Plaintiff has already produced thousands and thousands of pages of documents responsive to these Requests. Perhaps what Plaintiff is really requesting is that it be given free access to roam through Defendant's proprietary CRM database, running searches that it would like to run, and looking without restraint at Defendant's documents, any of them, kept within the system in the ordinary course of business. This is not the way the Federal Rules of Civil Procedure operate. Defendant exercised its absolute right to produce documents responsive to Request Nos. 22, 24, 25, and 26 in such a way as to correspond to the requested categories; Plaintiff, as requesting party, simply has no right to request that documents be produced in a different way. See Fed. R. Civ. P. 34(b); *Mizner Grand Condominium Ass'n, Inc. v. Travelers Property & Cas. Co. of America*, 270 F.R.D. 298, 700 (S.D. Fla. 2010) (party responding to discovery request has option of producing documents as kept in the ordinary course of business or as corresponding to the categories of the requests).[9]

## C. Plaintiff Is Not Entitled to Defendant's YEF Product "Source Code"

As set forth, *supra*, Plaintiff, the Master of Its Complaint in this case, framed its entire patent infringement case, from initial pre-suit correspondence to Defendant, to the

---

[9] To the extent Plaintiff contends that Request No. 8 of the First RFPs supports it newly-minted claim for "all CRM Data" and a free pass to go rooting around in Defendant's business systems at the thirteenth hour, Request No. 8 (demand premised upon "factors considered by customers in connection with the purchase of any Product-at-Issue," etc.), the language of the Request is hopelessly vague, Defendant so objected to it as such with specificity in October 2015, and Plaintiff has never challenged that objection (and does not do so in the Motion to Compel). Any reliance on Request No. 8 is as misplaced as it is improper and untimely.

filing of the Complaint, the Amended Complaint, and the Second Amended Complaint in 2016, around Defendant's TFC and PTS products.  Moreover, Defendant's Interrogatory Responses served more than 3 years ago before the filing of the Second Amended Complaint, specifically identified the YEF products.  Sitting on its hands for years and waiting until fifty minutes before the fact discovery cutoff in this 4 year old case to raise the YEF Product "source code" for the first time with the Court is the textbook definition of waiver.  *See, e.g., Pfeil v. Rogers*, 757 F.2d 850, 857 (7th Cir. 1985) (party waives discovery rights where failure is due to its own lack of diligence in securing discoverable information).

Moreover, Plaintiff never sought the YEF Product "source code."  Request No. 8 of the First RFPs requests "source code" for the "Products-at-Issue," which the parties and their counsel have agreed in writing and in discovery means the TFC and the PTS products.  Indeed, Plaintiff requested to review Defendant's TFC and PTS "source code" specifically pursuant to Request No. 8 in 2016 and again in 2018 and Defendant complied.  Simply put, no timely discovery request for the requested information was ever made for the YEF product "source code," so no motion to compel its production can lie here.  *See McLane v. Ethicon Endo-Surgery, Inc.*, 2014 WL 12623667, *4 (M.D. Fla. 2014) (opposing party must have requested a document in order for a party to be compelled to produce that document).

Worse for Plaintiff, Plaintiff admits it had full and fair access to Plaintiff admits that its experts previously examined the source code for the true products at issue PTS and TFC and viewed the YEF module.  (Doc. 144, at 16).  These previous inspections of Defendant's code spanned two months and Plaintiff's experts were able to fully discern the architecture, functions, and operations of the code, including the YEF module used in connection with the

17

PTS and TFC.  Indeed, Plaintiff's infringement contentions demonstrate a detailed understanding of the structure and function of all the code that was produced and included no mention of the YEF Module.  Plaintiff's experts had the ability to determine the function and operation of all the produced code, including the YEF module and any purported screen editing.  This function was not suddenly learned at the May 2019 depositions, which are clearly only cited to obscure Plaintiff's substantial delay in seeking to compel information about Defendant's product line within its possession for years.  Further, the deposition testimony cited (Doc. 144, Exhibit G) makes no mention of this purported editing function.

### D. Plaintiff Is Not Entitled to Defendant's Recent Investor Information.

Although Plaintiff purports to seek an Order from this Court compelling the production of information concerning SFW Capital Partner and an investment in Plaintiff that it recently made, Plaintiff admits it has no basis for the request and has not requested the information in discovery.  Specifically, on page 9 of the Motion to Compel, Plaintiff creates a chart purporting to identify each of its four categories of information sought in the Motion to Compel, CRM data, "source code" for the YEF product, newly written Javascript "source code" for PTS/TFC (a complete red herring, *see infra*), and SFW Capital Partners information, setting out a "Corresponding Rule 34 Request" for each.

For the SFW Capital Partners issue, Plaintiff lists as follows:

| Category of Current Request | Corresponding Rule 34 Request |
| --- | --- |
| Major Interest Purchased by SFW | |

*See* Motion to Compel, at 9.

18

Yes, Plaintiff left the "Corresponding Rule 34 Request" field blank.  That is because Plaintiff has no "Corresponding Rule 34 Request" in its discovery requests in this case where it requested the information.  The Court cannot compel the production of documents Plaintiff did not request in discovery.  *See McLane, supra*.

### E.   Defendant Agreed to Produce PTS/TFC Javascript "Source Code."

On April 16, 2019, before Plaintiff took any of Defendant's depositions, Defendant's counsel emailed Plaintiff's counsel and stated:

> In preparation for the depositions next week, we learned that Green Shades has recently changed the underlying technology . . .[to] technology that includes HTLM5, CSS, sand TypeScript (which is a superset of JavaScript). . . .  <u>If Aatrix wishes to have its experts inspect this changed technology, please let us know when and we can make it available in our Jacksonville office.</u>

Motion to Compel, Ex. F (emphasis added).  Plaintiff attached this email to its Motion to Compel.  *Id.*  Plaintiff's request either a mistake or a disingenuous red herring.

After Defendant's counsel's April 16, 2019 email, on Monday, May 20, 2019, Plaintiff's counsel again confirmed that Plaintiff's experts could review the new Javascript "source code," and Defendant's counsel confirmed again what he had offered more than a month before in his April 16, 2019 email.  Plaintiff's May 20, 2019 email to Defendant's counsel confirming the contents and position statements set forth by each in the Local Rule 3.01(g) conference earlier that date further confirms the same arrangement.  Ex. A.  Why Plaintiff saw fit to include this issue in its Motion to Compel is a mystery:  it was raised by Defendant's counsel, the new "source code" was offered for inspection, and counsel for the parties had confirmed it before this Motion to Compel was ever filed.  This is a false dispute

where there never was one, coupled with an improper demand for the YEF product code in an effort to add an air of legitimacy to the YEF "source code" claim is has no basis to assert.

## IV.    CONCLUSION

For all the foregoing reasons and authorities, Defendant Green Shades Software, Inc. respectfully requests that this Court enter an Order denying Plaintiff Aatrix Software, Inc.'s Motion to Compel Production of Documents.

Dated:  June 3, 2019.

Respectfully submitted,

/s/*Jeffrey S. York*

H. Timothy Gillis
Trial Counsel
Florida Bar No. 133876
Jeffrey S. York
Trial Counsel
Florida Bar No. 0987089
Shutts & Bowen LLP
1022 Park Street, Suite 308
Jacksonville, Florida 32204
Phone: (904) 899-9926
Fax: (904) 899-9965
tgillis@shutts.com
jyork@shutts.com

-and-

Joseph W. Bain
Trial Counsel
Florida Bar No. 860360
Shutts & Bowen LLP
525 Okeechobee Blvd.
West Palm Beach, FL 33401
jbain@shutts.com

*Attorneys for Defendant*
*Green Shades, Software, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on June 3, 2019, I electronically filed the foregoing with the Clerk of Court pursuant to the Administrative Procedures for Electronic Filing in Civil and Criminal Cases of this Court by using the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

/s/Jeffrey S. York
Attorney

21