UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AATRIX SOFTWARE, INC.,

    Plaintiff,

v.                                              Case No. 3:15-cv-164-J-20MCR

GREEN SHADES SOFTWARE, INC.,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** is before the Court on Defendant's Motion to Compel Production of Documents and Memorandum of Law in Support ("Motion") (Doc. 140), and Plaintiff's response in opposition thereto ("Response") (Doc. 141). Upon consideration of the parties' submissions and for the reasons stated herein, the Motion is due to be **DENIED**.

**I.    Background**[1]

Plaintiff initiated this patent infringement claim against Defendant on February 13, 2015. On September 24, 2015, Defendant served Plaintiff with its First Request for Production of Documents, to which Plaintiff responded on December 5, 2015. (*See* Docs. 140-1 & 140-3 at 1.) On March 30, 2016, the Court granted Defendant's motion to dismiss Plaintiff's Amended Complaint and,

---

[1] As the parties are familiar with the facts in this case, they will not be restated here in length.

on November 17, 2016, denied Plaintiff's motion for leave to amend. (Docs. 59 & 71.) Plaintiff appealed the Court's orders, and, on June 7, 2018, the case was remanded to this Court after the Federal Circuit Court of Appeals vacated the Court's dismissal of Plaintiff's Amended Complaint and reversed the Court's denial of Plaintiff's motion for leave to file a Second Amended Complaint. (*See* Doc. 82 at 1-2.) The parties resumed the discovery process after the case was remanded. (*See* Doc. 140 at 1.) On February 24, 2019, the Court held a Markman Hearing. (Doc. 133.) On March 19, 2019, the Court extended the fact discovery deadline to May 20, 2019. (Doc. 137.) The parties asserted that they "completed fact discovery in accordance with the Amended [Second Case Management and Scheduling Order] . . . [w]ith the exception of the issues raised by both parties in [the] pending Motions to Compel before the Court and the agreed limited continuance of the Aatrix 30(b)(6) deposition." (Doc. 153 at 1; *see also* Docs. 140, 142, & 144.)

In its Motion, Defendant seeks to compel Plaintiff to produce responsive documents to its First Set of Requests for Production, specifically, Request Nos. 1, 3, and 4. (Doc. 140.) Defendant claims it requested the following:

> **DOCUMENT REQUEST NO. 3**: Documents identifying and describing all versions of (1) the Aatrix Forms Designer (as referenced in the Patents-in-Suit), (2) the Payroll Series software package (as identified in the Jensen declaration at Doc. 26) created prior to March 26, 2002, and (3) any other "typical solutions" referenced in the background of the Patents-in-Suit, as well as a copy of the source and object code for each.

> **DOCUMENT REQUEST NO. 4**: All documents relating to the development, reduction to practice or testing of any subject matter described or claimed in the Patent[s]-in-Suit or any Related Patents, including, but not limited to, engineering and laboratory notebooks, log books, record books, memorandum, design reviews, progress reports, technical reports, drawings, schematics, specifications, diagrams, computer records, diaries, calendars, test results, source code, software development notes, software development guides or other files.

(*Id.* at 3.)  According to Defendant, Plaintiff provided the following response to Request Nos. 3 and 4:

> All such documents will be produced at the offices of Briggs and Morgan, P.A., or by such other means as are agreed between the parties, to the extent they exist, have been preserved, are in the possession or control of Plaintiff, are not privileged or work product, and are reasonably calculated to lead to the discovery of admissible evidence. The request seeks documents and code dating back approximately 25 years. To the extent such documents and code have been preserved and relate to the inventions, they will be produced.

(*Id.*)  Defendant also notes that Request Nos. 3 and 4 "are not expressly limited to the production of [source] code,[2] and indeed request a wide array of non-code documents, such as documents related to the Aatrix Forms Designer, the Payroll Series software package, and other non-code documents related to the Patents-in-Suit," including "relevant notebooks, log books, reports, and the like related to the development, reduction to practice or testing of any subject matter described or claimed in the Patents-in-Suit or any Related Patents."  (*Id.* at 4.)

---

[2] Defendant notes that Plaintiff's failure to produce source code may be addressed in a separate motion to compel.  (*Id.* at 6-7.)

3

Albeit in a footnote, Defendant also claims that Plaintiff failed to provide responsive documents to Request No. 1, requesting: "All documents identified or relied on in your initial disclosures under Federal Rule of Civil Procedure 26(a), your interrogatory responses or your responses to requests for admission in this case." (*Id.* at 5 n.1; *see also* 140-1 at 3.)  In its response, Plaintiff stated that:

> Documents identified or relied on in Plaintiff's interrogatory responses will be produced subject to any objections in those responses and the objections herein. Plaintiff has been served with no requests for admissions. All other such documents will be produced at the offices of Briggs and Morgan, P.A., or by such other means as are agreed between the parties, to the extent they exist, have been preserved, are in the possession or control of Plaintiff, are not privileged or work product, and are reasonably calculated to lead to the discovery of admissible evidence.

(Doc. 140-1 at 3.)  Defendant now claims that although Plaintiff agreed to produce responsive documents, it also "failed to produce documents responsive and related to Defendant's prior Interrogatory Nos. 4 and 5 of Defendant's First Set of Interrogatories to Plaintiff."[3]  (Doc. 140 at 5 n.1.)

Defendant asserts that Plaintiff has only produced financial documents, and has "failed and refused to produce a whole host of non-code documents that fall squarely within the responsive call of Request Nos. 3 and 4, including but not limited to" the following documents:

---

[3] In Interrogatory Nos. 4 and 5, Defendant requested that Plaintiff identify "(i) all software or systems referenced in the background of the Patents, including the vendor, manufacturer or source and the dates of availability for each, and (ii) all versions of the Aatrix Forms Designer (as identified in the Patents) and Payroll series software package (as identified in the Jensen declaration at Doc. 26) that existed prior to March 26, 2002." (Doc. 140 at 5 n.1 (internal quotations omitted).)

4

- Documents including developer's notes, programmer's comments, release notes, manuals, etc. relating to the various Aatrix Forms Designer versions before March 2002 listed in answer to Interrogatory No. 5.

- Documents including developer's notes, programmer's comments, release notes, manuals, etc. relating to Aatrix Payroll Series (including Top Pay and Ultimate Payroll) software versions before March 2002.

- Documents including developer's notes, programmer's comments, release notes, manuals, etc. relating to the AFD Runtime Module referenced in col. 2, ll. 9-15 of the '615 Patent.

- Documents including developer's notes, programmer's comments, release notes, manuals, etc. relating to the "interpreter" referenced in col. 1, ll. 55-59 of the '615 Patent.

- Documents including developer's notes, programmer's comments, release notes, manuals, etc. relating to the Universal RectFinder Format referenced in col. 2, ll. 11- 15 of the '615 Patent.

- Documents including developer's notes, programmer's comments, release notes, manuals, product documentation and product samples relating to "State Forms" project and forms available for sale by the end of 1995 referenced at col. 1, l. 65- col. 2, l. 8 of the '615 Patent, including the referenced "forms tool itself and the runtime module" and all associated Aatrix State Forms Preparer products between 1995 and 2002.

(*Id.* at 4.)

According to Defendant, Plaintiff produced 15,517 documents, totaling 624,770 pages, but failed to produce any documents in response to Request Nos. 3 and 4. (*Id.* at 5.) Defendant also claims that on March 21, 2019, Plaintiff supplemented its production of documents with an additional 7,103 documents,

5

but still failed to provide responsive documents to Request Nos. 3 and 4. (*Id.*) Defendant notes a purported "complete lack of any technical documents related to the period [from] 1995 to 2002, which is the period where Plaintiff claims the inventions were under development." (*Id.*) Although Plaintiff asserted it had produced all responsive documents to Defendant's First Request for Production of Documents, with the exception of source code, Defendant alleges that "a simple search of publicly-available information archived from Plaintiff's own website indicates that there is, in fact, documentation responsive to Defendant Request Nos. 3 and 4." (*Id.* at 6.) Defendant argues that Plaintiff failed to produce documents that "could go to show that Plaintiff did in fact release early versions of their product, calling into question whether a statutory bar to Plaintiff's claims exists." (*Id.*) Defendant also claims that the "expansive view of claim terms argued by Plaintiff at the Markman hearing on February 27, 2019" make the requested information and materials all the more necessary. (*Id.*) Defendant argues that Plaintiff also ignored its request to identify the individuals involved in searching for responsive materials, in order to "investigate by deposition the efforts made and why the documents are not available to be produced." (*Id.* at 7.) Finally, Defendant argues that the requested discovery materials "that are non-code and relate to Plaintiff's Patents-in-Suit and any Related Patents . . . are clearly relevant and proportional to the needs of the case." (*Id.* at 8.)

Plaintiff, on the other hand, counters that, "[t]o the extent Defendant's Motion seeks non-code design development documents, it seeks something that

6

does not exist."[4]  (Doc. 141 at 4.)  Plaintiff alleges it has "told Defendant's counsel, repeatedly, that except for notes and the like in the source code itself, all design and development documents that existed when this litigation commenced, have been produced" and "[t]here are no others to be produced." (*Id.* at 2.)  According to Plaintiff, Defendant's request for "design and development documents"[5] is only relevant as to prior art and to documents that "pre-date the prior art 'critical date' [of] March 26, 2001."  (*Id.* at 1 (footnote omitted).)  Plaintiff also argues that Defendant's Motion is "extremely untimely" since it seeks to compel the production of documents "to three of the forty requests Aatrix responded to three years ago."  (*Id.* at 5, 12.)  Plaintiff claims that "to bring these issues up only at the close of discovery, and in the middle of the depositions of Greenshades's own employees, is unjustified[,]" and that Defendant's failure to bring its Motion to Compel within a reasonable time period warrants its denial.  (*Id.* at 12-14.)

Additionally, Plaintiff claims it re-reviewed documents captured in 2016 and produced "a handful of very old product manuals, which Defendant[] had not

---

[4] Plaintiff makes various detailed arguments as to why it is not required to produce source code; however, Defendant specifically noted that its Motion was for non-source code materials, and that Plaintiff's alleged failure to produce source code could be the subject of a separate motion to compel.  (*See* Doc. 140 at 6 n.2.)  As such, the undersigned finds Plaintiff's arguments regarding source code are immaterial to the instant Motion.

[5] "This term is meant to include all of the technical documents requested in Defendant's Request for Production of Documents Nos. 3 & 4, which are at issue in Defendant's Motion to Compel, except for source code."  (*Id.* at 1 n.1.)

7

identified as being of interest in 2016, but little else over and above the 660,000 pages of documents previously produced."[6] (*Id.* at 11.) Plaintiff argues that the large numbers of design and development documents it is purportedly withholding from Defendants "simply never existed" and explains that:

> [Plaintiff] had one primary software developer during the relevant period, A. Dale Jensen, who is one of the inventors of the '615 and '393 Patents. There was no "committee" of programmers and no need for design development documents to keep projects organized. Other than the source code, which Mr. Jensen wrote, the documents simply never existed.

(*Id.*) Plaintiff also argues that it had a similar growth trajectory as Defendant, and as Matthew Kane, co-CEO of Defendant, testified, "until the last 4 or 5 years, [Defendant] was a small company, and it did not need and did not generate any design development documents." (*Id.*) Thus, Plaintiff argues, "it is disingenuous for Defendant to assert it has no such documents, and then falsely accuse Plaintiff of withholding [discovery]." (*Id.*)

In response to Defendant's argument that material from Plaintiff's archived website shows it withheld responsive materials that could demonstrate that Plaintiff released "early versions of their product, calling into question whether a

---

[6] Plaintiff also claims that it has investigated further and located "a handful of user manuals, which it has already produced to Defendant before the filing of this response." (*Id.* at 18.) Plaintiff claims it has conducted "yet another harvest of documents and search for non-code documents that are older than March 26, 2001, the date one year before Aatrix filed the application for the '615 patent[,]" and "while it is unclear if any newly-discovered documents have any relevance to the claims and defenses at issue in this litigation," Plaintiff "has erred on the side of caution and produced responsive documents when they have been found." (*Id.*)

8

statutory bar to Plaintiff's claims exists[,]" Plaintiff counters that the website cited by Defendant "is not within Aatrix's possession, custody, or control" and "the purported date appearing on the non-party webpage is 1997, twenty-two years ago and eighteen years before this litigation." (*Id.* at 19.)  Plaintiff also claims that "Defendant's citation does not demonstrate that responsive documents, if they ever did exist, still exist and were within Aatrix's control as of the filing of this action." (*Id.*)  Plaintiff asserts that it has not withheld responsive discovery materials to Request Nos. 1, 3, and 4, other than "the source code documents which [Defendant] said were unnecessary and irrelevant." (*Id.*)

## II.     Standard

It is clear that the parties may obtain discovery:

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  The rules "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1543, 1547 (11th Cir. 1985).  "The discovery process is designed to fully inform the parties of the relevant facts involved in their case." *United States v. Pepper's Steel & Alloys, Inc.*, 132 F.R.D. 695, 698 (S.D. Fla. 1990) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  "The overall purpose of discovery under the Federal Rules is

9

to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671-Orl-31DAB, 2007 WL 3232227, at *1 (M.D. Fla. Oct. 31, 2007) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)). Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion requiring judicial intervention. Furthermore, "[d]iscovery in this district should be practiced with a spirit of cooperation and civility." Middle District Discovery (2015) at 3.

    Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir.1984). The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party. *See Westrope*, 730 F.2d at 731. The party bringing a motion to compel discovery "bears the burden of demonstrating that the information it seeks is relevant." *Costa v. Metro. Life. Ins. Co.*, No. 6:17-cv-714-Orl-40TBS, 2018 WL 1635642, at *2 (M.D. Fla. Apr. 5, 2018). For the Court to be able to rule on a motion to compel, it must "be specifically targeted to specific requests and must have reasons why the motion should be granted." *Newman v. Sun Capital, Inc.,* No. 2:09-cv-445-FtM-29SPC, 2010 WL 11470980, at *1 (M.D. Fla. Jan. 15, 2010).

"A party objecting to a request for production must: (1) 'state with specificity the grounds for objecting to the request, including the reasons;' (2) 'state whether any responsive materials are being withheld on the basis of that objection;' and (3) '[a]n objection to part of a request must specify the part and permit inspection of the rest.'" *Local Access, LLC v. Peerless Network, Inc.*, No. 6:17-cv-236-Orl-40TBS, 2018 WL 2938393, at *2 (M.D. Fla. June 12, 2018) (quoting Fed. R. Civ. P. 34(b)(2)). "The rules leave no place for boilerplate style objections." *Id.* (citations omitted). Local Rule 3.04(a) provides:

> A motion to compel discovery pursuant to Rule 36 or Rule 37, Fed.R.Civ.P., shall include quotation in full of each interrogatory, question on deposition, request for admission, or request for production to which the motion is addressed; each of which shall be followed immediately by quotation in full of the objection and grounds therefor as stated by the opposing party; or the answer or response which is asserted to be insufficient, immediately followed by a statement of the reason the motion should be granted. The opposing party shall then respond as required by Rule 3.01(b) of these rules.

M.D. Fla. R. 3.04(a). Local rules "have the force of law," *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (internal quotations and citation omitted), and "[t]he importance of these Rules cannot be overstated." *U.S. v. Fleming*, No. 3:09-cv-153-J-34TEM, 2010 WL 5128293, at *1 (M.D. Fla. Dec. 10, 2010).

### III.   Discussion

First, the undersigned is unpersuaded by Plaintiff's argument that Defendant's requests and Motion were untimely. A court's decision as to whether a party has waived its challenge to a discovery violation, by failing to

11

address the violation when first discovered, is discretionary. *Goers v. L.A. Entertainment Group, Inc.*, No. 2:15-cv-412-FtM-99CM, 2017 WL 2578649, at *3 (M.D. Fla. June 14, 2017) (internal citations omitted). "In considering the timeliness of a motion to compel or for sanctions, the Court considers such factors as when the movant learned of the discovery violation, how long he waited before bringing it to the court's attention, and whether discovery has been completed." (*Id.*) (citations and internal quotations omitted). Although Plaintiff refers to a three-year delay in Defendant's efforts to obtain the discovery materials at issue, the delay between the issuance of the initial request for discovery and Defendants more recent efforts to obtain responsive documents from Plaintiff is more appropriately attributed to the procedural posture of the case, including the lengthy intervening appeal period, rather than undue delay on Defendant's part.

Nevertheless, based on Plaintiff's assertions that it has conducted additional searches and produced all responsive non-source code documents, it appears that Plaintiff has complied with Defendant's Request Nos. 1, 3 and 4. The Court cannot compel Plaintiff to produce that which does not exist. As Plaintiff explained, it was a small company in the period before 2002, "the time period that Defendant argues is most relevant in its belated motion, and development work was not performed by committees numbering in hundreds of people." (*Id.* at 17.) Instead, Plaintiff only had "a handful of employees, and accordingly, the development and programming work was not memorialized or

12

reflected in formal developer's notes and programmer's comments." (*Id.*) According to Plaintiff, "[i]nstead of talking about it in endless committee meetings, the problems recognized and confronted by Aatrix during its product development were informally worked out, not via formal documentation." (*Id.* at 18.)

Notwithstanding Defendant's skepticism regarding Plaintiff's position in this regard, the Court cannot compel Plaintiff to produce documents that it claims it does not have. *See, e.g., Thermoset Corp. v. Building Materials Corp. of America*, No. 4-60268-CIV, 2014 WL 6473232, at *4 (S.D. Fla. Nov. 18, 2014) ("The Court agrees that it cannot compel a party to provide information or produce documents that it does not have in its possession, custody, or control.") (citations omitted); *see also Calhoun v. Volusia Cnty.*, No. 6:04-cv-106-Orl-31DAB, 2007 WL 1796259, at *1 (M.D. Fla. June 20, 2007) ("[T]he Court cannot compel production of documents that do not exist.").

Furthermore, in light of the legitimate concerns raised by Plaintiff and the well-reasoned arguments made in response to the Motion, the undersigned finds that Plaintiff was substantially justified so as to deny Defendant's request for costs under Rule 37. *See, e.g., Suboh v. Bellsouth Bus. Sys., Inc.*, No. 1:03-cv-0996-CC-CCH, 2004 WL 5550100, at *11 (N.D. Ga. Nov. 17, 2004) (declining to award attorney's fees because "[t]he Court conclude[d] that Defendant was, in part, substantially justified in refusing to produce some of the material requested by Plaintiff.").

13

Accordingly, it is **ORDERED:**

Defendants' Motion (**Doc. 140**) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, on November 19, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record