```
 1            IN THE UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
 2                   JACKSONVILLE DIVISION

 3   AATRIX SOFTWARE, INC.,        Jacksonville, Florida

 4            Plaintiff,           Case No. 3:15-cv-164-J-20MCR

 5         -vs-                    May 20, 2020

 6   GREEN SHADES SOFTWARE, INC.,  10:58 a.m.

 7            Defendant.           Courtroom 10C
     _____
 8

 9           TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
             BEFORE THE HONORABLE HARVEY E. SCHLESINGER
10                   UNITED STATES DISTRICT JUDGE
```

21  OFFICIAL COURT REPORTER:

22      Shelli Kozachenko, RPR, CRR, CRC
        221 N. Hogan Street, #185
23      Jacksonville, FL  32202
        Telephone:  (904) 301-6842
24
                        (Proceedings reported by stenography;
25                       transcript produced by computer.)

**A P P E A R A N C E S**

COUNSEL FOR PLAINTIFF:

    **John Lunseth, Esquire**
    **Aaron Johnson, Esquire**
    **Mira Vats-Fournier, Esquire**
    Taft Stettinius & Hollister LLP
    80 South 8th Street, Suite 2200
    Minneapolis, MN  55402

    **Joanne O'Connor, Esquire**
    Jones, Foster, Johnston & Stubbs, PA
    505 South Flagler Drive, Suite 1100
    West Palm Beach, FL 33402

COUNSEL FOR DEFENDANT:

    **Joseph Bain, Esquire**
    Shutts & Bowen, LLP
    525 Ockeechobee Boulevard, Suite 1100
    West Palm Beach, FL  33401

    **Harold Timothy Gillis, Esquire**
    **Jeffrey York, Esquire**
    Shutts & Bowen, LLP
    1022 Park Street, Suite 308
    Jacksonville, FL  32204

```
1                        P R O C E E D I N G S
2    May 20, 2020                                       10:58 a.m.
3                                - - -
4              THE COURT:  Okay.  We ready to go now?
5              MR. LUNSETH:  Yes, we are, Your Honor.
6              COURTROOM DEPUTY:  Your Honor, I'm not sure -- did
7    someone else join the call after Ms. O'Connor?
8              MR. LUNSETH:  Ma'am, this is Mr. Lunseth.  I think
9    the other two people, Ms. Johnson and Mr. Way, are no longer
10   involved in the case.
11             COURTROOM DEPUTY:  Okay.  Thank you.
12             MR. LUNSETH:  I don't think we're expecting anyone
13   else.
14             COURTROOM DEPUTY:  Okay.  Thank you.
15             MR. BAIN:  All defendant's counsel are here.
16             THE COURT:  How about the plaintiff's?
17             MR. LUNSETH:  Yes.  All plaintiff's counsel are here.
18             THE COURT:  Okay.  So I have the motion with respect
19   to what everybody is interested in, just some logistical
20   problems.  I would assume that people from Minneapolis are not
21   interested in getting on an airplane and coming to Jacksonville
22   right now.
23             So you tell me, have you had any discussions amongst
24   yourselves with respect to the issue that you have raised?
25             MR. LUNSETH:  Your Honor, this is John Lunseth.
```

1       I don't believe there's a pending motion about the
2  logistics.  The status of the case is that the parties have
3  completed expert reports.  The next step would be the taking of
4  expert depositions, after that the filing of *Daubert* and
5  summary judgment motions.  And there needs to be, of course,
6  four to five months from then until trial.
7       And so we have two issues, I think, that we wanted to
8  discuss with the Court in the status conference.  One is there
9  is a -- an indefinite trial date in the current scheduling
10 order of January of next year, and that would fit with our
11 current schedule.
12      We are wondering, I think, what -- if the Court has a
13 handle on how trials are going to progress.  We assume you have
14 some kind of a backlog, as a result of the COVID event, of
15 criminal cases and things of that nature.
16      So I think we'd like to know if January is realistic
17 at all.  I think at some point the parties are going to need a
18 date certain because we have quite a few witnesses, including
19 experts, who will be coming from out of town.
20      And then the other issue is that at the last status
21 conference that we had before the Court, I was asked how long
22 the trial will take, and I said three to four weeks, and I
23 think that assessment is accurate.
24      And Your Honor raised the issue that because of your
25 senior status, you wouldn't try the case, and you solicited our

1  views on what we thought should be done about a trial judge for
2  this case.  And I think that both counsel would like to speak
3  to that issue.
4           So the two issues are, what shape is the Court in?
5  Can we expect a trial in January even if we set one?  And
6  second, what can we do about getting a judge on the case who's
7  going to sit for trial?
8           THE COURT:  Okay.  Well, the answer to your first
9  question is only God knows.  This is the situation.
10          The situation with respect to a date to reopen the
11 courthouse has not been made.  There has been basically no
12 planning with respect to how do we do that, and most of all
13 what do we do about juries.
14          We have not had a district meeting on the issue.  We
15 haven't had a real division meeting on that issue except for us
16 internally, at a meeting we had at the end of April, to raise a
17 question with respect to -- our jury plan only allows people
18 over the age of 70 to be excused because of age.
19          What do we do now when we send out a jury notice and
20 somebody over the age of 60 who's in a vulnerable group and
21 we're still not in Phase III says, "I'm not coming out to go to
22 your courthouse for several reasons, the main one being I have
23 heard through the grapevine" -- and it isn't through the
24 grapevine; it's public notice.
25          We do not have any room in that courthouse, other

1  than the jury assembly room, where we could put a jury six feet
2  apart from one another.  We don't have a jury deliberation room
3  big enough to hold a jury.  And we've been waiting for a group
4  from the Administrative Office who's supposed to study this
5  issue to come up with some suggestions.
6            I did notice some headlines in a Texas newspaper
7  earlier this week that a judge in Texas was going to hold a
8  video jury trial, then I got further into the issue.
9            Have any of you ever tried a summary jury trial?
10           MR. LUNSETH:  Yes.
11           THE COURT:  Okay.  So you know how the process works.
12           Well, it turned out this judge was holding a summary
13 judgment trial in a patent case -- well, either it was a
14 patent -- it was either a patent or a copyright case.
15           Well, when you read the headlines, you said, "Oh, my
16 gosh.  They're going to try a real trial video."  Well, it
17 wasn't true.  They were just going to do a summary jury trial,
18 so we didn't have any constitutional issues to worry about.
19           I wish I could answer the question.  I just finished
20 another call on a criminal case that has far more problems than
21 you have, and this was the last thing we discussed.
22           Like, somewhere around June 24th, I have 12 criminal
23 sentencings of defendants in custody, so my law clerk is busy
24 talking to the marshal now.
25           Are we really serious that you're going to load 12

1  inmates in a van and lug them to Jacksonville?  Because we
2  don't house people in our Duval County Jail.  They're either in
3  Baker County or Nassau.  And then we're going to put them in
4  the marshals' lockup on the same bench wearing their masks?  I
5  haven't gotten an answer of how we're going to do that yet.
6          So the answer to your first question is, yeah, we're
7  in a real jam.  And, second of all, I can't tell you how we're
8  going to come out of it.  I know we're going to come out of it.
9          I told the other group of lawyers if they had social
10 media in the Middle Ages, the black plague might not have
11 killed as many people.  But, you know, there are all kind of
12 problems.
13         I would normally say this, but I know -- at least
14 from what I gather, I'm sure the plaintiffs in this case want
15 to get the case over with; the defendants probably don't.
16         If you people can come up with an agreed-to date,
17 I'll be happy to make that the target date.  If you want me to
18 put it up, I'll make one.  Otherwise, I'll just stick it
19 somewhere in January and see how, you know, things go.
20         It's a lot easier to get a snowbird to come down
21 here.  I'm not so sure that it would be easy on my part to ask
22 one of our other active judges in Jacksonville to try a three-
23 or four-week patent case, so we'll see how that goes.  But
24 that's -- that's the best that I can answer, you know.
25         And we're talking about something in January, so if

1  you people want more time to talk amongst yourselves and get
2  back with me, we could do that, or we could just try to hash it
3  out today as best we can.
4         MR. LUNSETH:  Well, for Mr. Bain's sake here, yes, we
5  did target it in January.  That seemed to make sense, and it
6  was intended to give the Court enough time to get through this
7  COVID issue.
8         But it dawned on us after the fact, the lawyers on
9  our side of the case, that January and probably February are
10 the most intense period of time for both of our clients because
11 of the volume of tax filings that go on at that point in time,
12 and it would be the worst possible time, for their sake, to
13 hold a trial.  In fact, probably virtually impossible.  It
14 would be the equivalent of shutting a business down for most of
15 a year, because that's when a lot of their work happens.
16        So it would be February or March, and I'm thinking
17 that Mr. Bain and I could take this part off line.  And we
18 could agree on a date or a range of dates and just send you a
19 document saying, "We agree it could be in this time frame,"
20 and -- and you could set a target date.
21        MR. BAIN:  This is Joseph Bain.
22        I would add to that that I think that the January
23 date was tied to us continuing on the current schedule, which
24 includes the completion of expert discovery by July 7th, which
25 is roughly six weeks from now.

1            And I think, while we seem to be, as a country,
2   making progress towards opening back up, I don't think we're
3   there yet.
4            When we had proposed the July 7th date to you back in
5   March, I believe, we did it with the anticipation of let's see
6   how the COVID crisis evolves.  And then we had acknowledged at
7   that time if things weren't quite out of the woods yet, we
8   would perhaps extend that expert discovery further.
9            The reason it's important is because all of the
10  experts are dispersed around the country, including in the
11  state of New York and the state of Washington, which I believe
12  are also still under partial lock-down.  It also involves a
13  number of experts that are over the age of 70.  So we've got
14  the continuing risk in taking depositions.
15           At this time -- and I don't know if this is the
16  plaintiff's view; I think it might be as well, that because of
17  the technical nature of the depositions, because of the volume
18  of documents and videos and things that might have to be
19  reviewed, we ultimately would ideally like to have, as much as
20  possible, in-person depositions as opposed to trying to do
21  everything virtually.
22           So in view of all of that, if we -- and, again, I
23  agree with Mr. Lunseth that we could take it off line and
24  propose something to the Court.
25           But I think, in view of where we are in coming out of

1  the COVID crisis today, extending the expert discovery another
2  month or two to give us more breathing room to try to get it
3  accomplished and then that would correspond with moving all the
4  dates off to perhaps March for a trial might be the most
5  realistic thing to do as we sit here today.
6         THE COURT:  Okay.  So let me -- let me just ask you
7  this.  You're sitting in Palm Beach -- West Palm Beach?
8         MR. BAIN:  Yes, Your Honor.
9         THE COURT:  And you say you're going to go to New
10 York to take a deposition of an expert.
11        MR. BAIN:  At some point.
12        THE COURT:  Okay.  And under the current guidelines
13 that are in effect in the state of Florida, you come back to
14 Florida, and you've got to self-quarantine for 14 days.
15        MR. BAIN:  This is why I would like to extend the
16 period for another two months and see if that changes.
17        THE COURT:  Yes.
18        So let me ask you this, then.  Would the smartest
19 thing be to let you people have some time to talk between
20 yourselves and set another telephone status conference, or if
21 you've agreed to everything, as was suggested by co-counsel,
22 just submit something to the Court; if you can't agree on
23 something, then we could just have another status conference?
24        My philosophy -- and I know we did this back in
25 March.  The last time I was in the office was about the 8th of

March. Today is the first day that I've done any hearings, because fortunately or unfortunately, the only people really that have been down in the courthouse -- we're basically closed, and everybody's been teleworking except some of the brave courtroom deputies have been down there and some law clerks, and the magistrate judges have kept everything else going.

So I'm -- I'm not inclined to say, well, we set it in January last March. It's in stone, and I'm not letting you people off the hook. I don't believe in telling lawyers how they should do their business as long as the lawyers aren't pulling my chain.

This is -- this is, as I said before, a real crisis, and it's going to take some people with some smarts on their heads to figure out how we get out of it. I'm not so sure that everybody that's been involved so far has made the correct decisions, but, you know, when you're dealing with a first-time happening, that's the way that it is.

When you're as old as I am -- I can remember when I was about the age of seven, some couple coming to New York City after vacationing in Mexico, and all of a sudden every resident in New York had to have a smallpox vaccination.

I can remember as a kid being told, "No, you can't go to the beach and you can't go to the swimming pool because you'll catch polio," until the entire nation got the polio

1  vaccine after some smart doctor was able to make it in the lab.
2         And for those of you that are probably remembering,
3  somewhere -- and it had to be between maybe 1973 or '4 and 1977
4  when President Ford entered some order; we all had to get some
5  kind of shot, and one of the side effects was Guillain-Barre
6  syndrome.  So things like this happen, but I don't think to the
7  extent nationwide as -- and worldwide as this current problem.
8         So you guys tell me what you want.  As far as I'm
9  concerned, if you people feel good enough to talk to one
10 another and try to resolve it, I'm game.  If you can't, no harm
11 lost.  We'll just have another conversation.
12        Or if you want to try to hash out some dates now,
13 I've got my calendar all for next year ready, so I can look it
14 up and see when we have some free time.
15        I think, according to my calendar now, January 4th
16 was the date.  And I hate to tell you people that don't live in
17 Florida, if you come from Minnesota, you're supposed to
18 quarantine 14 days after you arrive in Florida.
19        MR. LUNSETH:  Your Honor, this is John Lunseth.
20        I don't disagree with anything that Mr. Bain says.  I
21 think March is a better idea, and I think that that would give
22 us a couple of months here, at least at the front end, to
23 postpone expert depositions until we see if there's a way we
24 can do them in person.
25        Mr. Bain and I have had the conversation about how

1  complex those depositions would be in this particular case.  We
2  have a lot of videographers and multiple court reporters, and
3  we need to display video and possibly working software.  It's
4  just a headache.  And I think we have to try to really do it in
5  person if that's at all possible.
6           So I think postponing it a couple of months --
7  postponing that deadline -- all the deadlines a couple of
8  months would be in order, and I think Mr. Bain and I can agree
9  to that and submit a written proposed schedule to you.
10          The only part you'll have to decide is what date in
11 March next year can we set as a date certain to try this case.
12          THE COURT:  The jury -- my jury trials for March
13 would be Monday, the -- hang on just a second.  Yeah, Monday,
14 March 1st.
15          MR. BAIN:  Okay.
16          MR. LUNSETH:  Okay.  Well, then the other issue,
17 though, was that you indicated that you would not try this case
18 because of the length of the trial, so we've got to deal with
19 that.
20          THE COURT:  Yeah.  No.  I'll take care of that.  You
21 don't worry about that.  The concern that I have -- because
22 yours isn't the only one.
23          I've got an MDL case that I can't convince the
24 lawyers they should try it in a week or so and that I've got to
25 find an MDL-qualified -- actually, I don't; the MDL panel has

Case 3:15-cv-00164-HES-MCR   Document 180   Filed 06/05/20   Page 14 of 20 PageID 6328

14

```
 1  to.
 2            But if we set a date certain now, I would have plenty
 3  of time.  I think the smartest thing to do may be to wait.  If
 4  we move -- the last order -- I think the last order that I
 5  entered was, like, on April 5th.
 6            MR. BAIN:  Yes.
 7            THE COURT:  Okay.  So if you look at that order --
 8  have you done the disclosure of the rebuttal experts?
 9            MR. BAIN:  Yes.
10            MR. LUNSETH:  All those are in, yes.  Those are in.
11            THE COURT:  Okay.  So the next one was the expert
12  discovery, which was July 7th.
13            MR. BAIN:  Yes.
14            THE COURT:  Okay.  So let's -- let's do this.  Labor
15  Day is September 7th, so why don't we make the expert
16  disclosures September 14th.
17            MR. BAIN:  Okay.
18            MR. LUNSETH:  Expert discovery, Your Honor.  All the
19  disclosures are done, so that's just the close of expert
20  discovery.
21            THE COURT:  Right.  Right.
22            MR. LUNSETH:  Yeah.
23            THE COURT:  Okay.  So that would be 14 September.
24            The motions to dismiss and *Daubert*, you can't do that
25  until after you've had that disclosure.
```

1           So how long do you need after that, another month?
2           MR. LUNSETH:  Yeah.  We had set a month in between.
3           THE COURT:  Okay.  So October -- how about October --
4    October 12th is Columbus Day, so how about the 19th?
5           MR. LUNSETH:  Yes.  That works.
6           THE COURT:  And would October -- oh.  Let's make
7    it -- would November 9th be a good date, then, for the
8    opposition's?
9           MR. BAIN:  Three weeks?  Yes.
10          THE COURT:  Okay.  And then the motions in limine,
11   how about to January -- let's find a January date.  January
12   4th.
13          And let's pick a pretrial conference date.  I have a
14   bunch of pretrials.
15          How about Wednesday, February 17th, at 9 o'clock in
16   the morning?
17          MR. BAIN:  Okay.
18          THE COURT:  That should save you the problem of
19   having to get together.
20          MR. LUNSETH:  Yes.
21          I -- I think I'd rather have four weeks for the
22   response to the summary judgment motion, which would be
23   November 16, rather than three weeks, but I don't know why any
24   of the other dates would need to change.
25          THE COURT:  That's okay.  That's fine.  So November

```
 1   16th -- hang on just a second -- would be December, January --
 2   that would be okay, as long as I have 90 days before the
 3   pretrial.
 4            MR. BAIN:  Okay.
 5            THE COURT:  So November to December, December to
 6   January, January to February.
 7            The reason I need the 90 days, I want to get the
 8   summary judgments and the dismissals done.  The pretrial order
 9   requires you have to meet, then, ten working days before the
10   17th.  So there's no need, at least in my mind, to have you
11   working on a count that may ultimately go out on summary
12   judgment.  I'd rather you know about that before you get
13   together.
14            So do those dates sound okay?
15            MR. LUNSETH:  Yes.
16            THE COURT:  How about the other side?  How about the
17   defendant?
18            MR. BAIN:  These are fine for defendants, Your Honor.
19            THE COURT:  Okay.  So I'll -- I'm only getting my
20   office mails generally on Tuesday and Friday, so if you don't
21   get the order before Monday or so, don't worry about it.  If
22   one of my law clerks can get it to me tonight, I can get it
23   back.
24            Okay.  What else can we discuss?
25            And I'll look around.  Do you have any suggestions on
```

1  who might want to come to Florida and try a nice patent case?
2          MR. LUNSETH:  Well, we still have the issue about who
3  the judge is going to be, Your Honor, and from plaintiff's
4  perspective, we would like that judge to handle the summary
5  judgment motions, because it's a very technical case.  And we
6  don't want a judge to come in to try a case for a month cold,
7  with no idea of what's going on in the case.
8          I have looked at -- you know, we have a judge up
9  here, Judge Magnuson, who's come down there and tried cases.
10 But I don't think he does patent cases anymore, and I don't
11 think he'd be interested in a four-week trial.
12         Our -- from our perspective, the fairest thing, I
13 think, is to simply put the case back on the wheel and pick
14 a -- pick a new judge.
15         MR. BAIN:  We don't agree.  The defendants -- Joseph
16 Bain here -- do not agree that a potential new judge for trying
17 the case is the best person to decide the summary judgment.
18         You have an enormous amount of institutional
19 knowledge and technical knowledge about the issues in this case
20 and are going to be in the best position to assess the
21 evidence, or the lack thereof, as to these issues.
22         And any judge that's appointed to try the case, I
23 think he can come up to speed based on what you decide remains
24 in the case after summary judgment.  So we don't agree with
25 that.

1       But to your question, we -- the defendants have not
2  identified a candidate judge to substitute for the trial.
3       The other thing is I recall, Your Honor, that if
4  the -- depending on the length of the trial, if it's not too
5  long, you could try it; is that correct?
6       THE COURT:  Yes.  Yeah.
7       MR. BAIN:  It's also possible, Your Honor, that after
8  summary judgment, the number of issues that remain -- if you
9  dispose of some of the patent claims, if you dispose of some of
10 the issues, what remains may be triable within the week or two
11 that I think you said you're willing to do.
12      THE COURT:  Okay.  I got -- I got -- if I have to get
13 somebody locally, I'll take care of the summary judgment
14 motions.  If I have to look outside, I might ask if they prefer
15 the summary judgment.
16      And generally the way that we've been doing it is the
17 senior judge assigned to the case takes care of it, ready for
18 trial.  And in all likelihood, if I need to get somebody
19 locally to do it, that's the way it will get done.  So I'll --
20 I'll let you know, okay?
21      Okay.  So let's do this, then.  As we start getting
22 into your discovery -- and I think I have a fairly good idea
23 about the lawyers' problems.  I don't know whether you're aware
24 of your experts' problems.
25      So as you start trying to set the expert discovery,

```
 1   if you're running into logistical problems with the proposed
 2   experts, let us know so we can see how we can keep this case on
 3   track --
 4           MR. BAIN:  Okay.
 5           THE COURT:  -- and get it done.
 6           Anything else?
 7           MR. BAIN:  Nothing further from the defendants, Your
 8   Honor.
 9           MR. LUNSETH:  No, Your Honor.
10           THE COURT:  Okay.  Well, good luck to everybody and
11   stay healthy.
12           MR. BAIN:  You too, Judge.  Thank you.
13           THE COURT:  Thank you.
14       (The proceedings were concluded at 11:27 a.m.)
15                            -  -  -
16
17
18
19
20
21
22
23
24
25
```

```
 1              CERTIFICATE OF OFFICIAL COURT REPORTER
 2
 3
 4  UNITED STATES DISTRICT COURT )
 5  MIDDLE DISTRICT OF FLORIDA   )
 6
 7         I hereby certify that the foregoing transcript is a
 8  true and correct computer-aided transcription of my stenotype
 9  notes taken at the time and place indicated therein.
10
11         DATED this 5th day of June, 2020.
12
13                              s/Shelli Kozachenko_____
                                Shelli Kozachenko, RPR, CRR, CRC
14                              Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25
```